**Jackie PRESTEGORD et vir, Petitioners,**

v.

**James C. GLENN, M.D., Respondent.**

**No. B–1326.**

Supreme Court of Texas.

May 7, 1969.

Harris E. Lofthus, Amarillo, for petitioners.

Stokes, Carnahan & Fields, Oscar P. Fields, Jr., Amarillo, for respondent.

STEAKLEY, Justice.

Petitioner, Jackie Prestegord, joined by her husband, instituted this suit for damages against Dr. James C. Glenn, Respondent, charging negligence in medical practice and treatment. Dr. Glenn moved for summary judgment on the ground that no genuine issue existed as to any material facts and that he was entitled to judgment as a matter of law "by reason of the depositions on file." The depositions referred to were those of Mrs. Prestegord, Dr. Glenn and Dr. William J. Hegedus, which were taken by Petitioner. Mrs. Prestegord also filed her affidavit and that of her husband in response to the motion for summary judgment. The trial court granted Dr. Glenn's motion and entered a take-nothing judgment against Petitioners. This was affirmed by the Court of Civil Appeals. 436 S.W.2d 623. We reverse the judgments below and remand the cause for further proceedings.

Dr. Glenn, a specialist in obstetrics and gynecology, attended Mrs. Prestegord in her pregnancy, which was established by his examination on August 25, 1966. Mrs. Prestegord subsequently experienced difficulties which culminated in the surgical removal of her uterus and the lifeless fetus on November 21, 1966. Mrs. Prestegord alleged that Dr. Glenn was negligent as follows: (1) in failing to discover the true cause of her difficulties in time to prevent loss of her uterus; (2) in making a negligent diagnosis and in failing to make proper tests; (3) in failing to properly treat her; (4) in performing an inadvisable and unnecessary hysterectomy upon her; and

(5) in failing to correctly diagnose a post-operative complication.

Mrs. Prestegord in her affidavit and deposition, and Dr. Glenn in his deposition, related in detail the difficulties experienced by Mrs. Prestegord and the treatment prescribed by Dr. Glenn. They differ in these significant respects. Mrs. Prestegord stated that she experienced "hard pain" in her lower abdomen on the left side, a constant pain that never quit, and that she communicated this to Dr. Glenn. Dr. Glenn testified that Mrs. Prestegord complained of "some cramping in her abdomen," and did not complain of hard or constant pain. He testified the cramping indicated to him that she was trying to miscarry, but that the presence of constant pain would have required him to gather more information on her condition, perhaps a complete blood count and abdominal X-rays. He stated that had such severe constant pain been present, he would have undertaken more thorough studies; but that the patient did not have the constant pain and did not indicate to him the presence of any pain but cramping.

Mrs. Prestegord also testified to the passing of blood of varying color at various times; she stated in her affidavit that she was examined by Dr. Glenn on October 17, 1966, on which occasion she "gushed fresh red blood." Dr. Glenn testified, however, that his records did not indicate that she gushed blood, but that she did have some vaginal spotting. He stated that he would have hospitalized her had she gushed blood, and that it would not have been good medical practice not to do something if she lost a serious amount of blood; and, further, that she could not have lost a significant amount of blood since she had a satisfactory blood count after the October 17 examination.

Mrs. Prestegord also testified that she suffered a postoperative condition which Dr. Glenn diagnosed as a stomach disorder, but that in fact she was suffering from pneumonitis. She stated that she obtained no relief from the medication prescribed by Dr. Glenn and in time was admitted to the hospital by another doctor where her condition was correctly diagnosed. She was in the hospital from December 8 to December 17, 1966, and has since suffered a form of pleurisy. Dr. Glenn agreed with the ultimate diagnosis of pneumonitis, but indicated that it could not have been correctly made at an earlier time.

The third deposition was that of Dr. Hegedus who we will assume was at such time a disinterested expert witness.[1] Dr. Hegedus is a specialist in obstetrics and gynecology, who offices with Dr. Glenn but is not associated with him. He was consulted by Mrs. Prestegord on November 17, 1966, because of the absence of Dr. Glenn from the city. Dr. Hegedus testified that at that time Mrs. Prestegord was eighteen to twenty weeks pregnant, had 101° temperature, a vaginal discharge with a foul odor, spotting of blood, soreness in the lower abdomen, and anemia. These symptoms led him to believe that she had an infection of the uterus, which he described in medical terms as endometritis and amnionitis. Dr. Hegedus ordered Mrs. Prestegord to the hospital for tests, and after an additional examination admitted her to the hospital. Therapy was then commenced to induce an abortion but this proved unsuccessful. On November 21, Dr. Glenn, assisted by Dr. Hegedus, performed surgery on Mrs. Prestegord in which her uterus and the lifeless fetus were removed. Dr. Hegedus expressed the medical view that the hysterectomy was necessary because of the extent of infection of the uterus and its contents.

The testimony of Dr. Hegedus was principally based upon his observations of the

1. The original petition filed by Mrs. Prestegord named only Dr. Glenn as a defendant. Subsequent to the taking of the deposition of Dr. Hegedus, he was named by Mrs. Prestegord as a defendant by her first amended original petition. Still later, Mrs. Prestegord took a nonsuit as to Dr. Hegedus.

condition of Mrs. Prestegord for the period from his original examination on November 17, and the tests which followed, to the time of the surgery four days later. He stated that he had no medical records concerning Mrs. Prestegord prior to November 17 since she had not been his patient; and, further, that he was not familiar with her symptoms or the exact medical care prescribed for her by Dr. Glenn prior to that time. However, in response to questions embracing the history of her case in various respects, Dr. Hegedus commented upon the diagnostic methods and treatment utilized by Dr. Glenn and expressed his general approval of such medical practices. He indicated that he probably would have taken care of Mrs. Prestegord in the same manner. He was not asked about, and expressed no opinion upon, the correct medical practice pertaining to the symptoms and difficulties to which Mrs. Prestegord testified. He was not interrogated regarding the negligence charged against Dr. Glenn during the postoperative period.

We agree with Petitioner that the burden upon Dr. Glenn as the movant for summary judgment was not discharged. The summary judgment record does not negative the existence of genuine and material fact issues or show that Dr. Glenn was entitled to a judgment as a matter of law. See Rule 166–A(c), Texas Rules of Civil Procedure. Apart from the absence of disinterested medical testimony regarding the postoperative complications described by Mrs. Prestegord, there is a conflict in her testimony and that of Dr. Glenn with respect to the preoperative symptoms of hard and constant pain in the abdomen and the discharges of blood. Dr. Hegedus was not interrogated with respect to medical standards of practice and treatment under the circumstances to which Mrs. Prestegord testified. Dr. Glenn recognized that he should, and would, have done more had the circumstances been as described by Mrs. Prestegord in her deposition and affidavit. The resolution of the factual disputes between them is for the trier of fact in a

conventional trial. See Snow v. Bond, 438 S.W.2d 549 (Tex.Sup.1969).

The judgments below are reversed and the cause is remanded to the trial court for further proceedings.