**JOE ADAMS & SON, Petitioner,**

v.

**McCANN CONSTRUCTION COMPANY, Respondent.**

No. B–2415.

Supreme Court of Texas.

Oct. 6, 1971.

Rehearing Denied Jan. 19, 1972.

Calvert, C. J., dissented from majority opinion and from denial of rehearing and filed opinions in which Steakley, McGee and Denton, JJ., joined.

Borwn, Crowley, Simon & Peebles, M. Hendricks Brown, Owens & Fortney, Walter S. Fortney, Fort Worth, for petitioner.

Shannon, Gracey, Ratliff & Miller, Harold A. Mueller, Fort Worth, for respondent.

WALKER, Justice.

The question to be decided is whether subcontractor-petitioner, Joe Adams & Son, is legally obligated to indemnify general contractor-respondent, McCann Construction Company, Inc., against the consequences of the respondent's own negligence. The trial court answered the question in the negative and rendered a summary take-nothing judgment in McCann's suit for indemnity. The Court of Civil Appeals answered the question in the affirmative, reversed the trial court's judgment, severed the issue of indemnity from the issues of attorney's fee, costs, etc., rendered summary judgment in favor of McCann for indemnity in the first cause and remanded the remaining cause to the trial court. 458 S.W.2d 477. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

McCann was the general contractor for the erection of a building and contracted with Adams to do certain concrete work. McCann built wooden forms extending some eighteen to twenty feet above ground level into which forms employees of Adams were to pour concrete from above for piers, beams and canopies. While three of Adams' employees were on top of the forms pouring concrete, the forms collapsed, and they, the wet concrete and the three employees all fell to the ground. The employees were injured and they collected workmen's compensation benefits from Adams' insurer. They then sued McCann who called on Adams to defend the suit and filed a third party indemnity action against Adams. The trial court severed out the third party action and tried the damage suit to a jury. All three plaintiffs recovered judgments against McCann for substantial sums as damages upon findings by the jury that certain acts and omissions by McCann in connection with the construction and use of the forms were negligent and proximate causes of the injuries.

After the judgment for damages against McCann became final, both McCann and Adams moved for summary judgment in the severed third-party indemnity action. The trial court overruled McCann's motion and granted Adams' motion. As heretofore indicated, the Court of Civil Appeals reversed.

McCann's right to indemnity from Adams, and therefore the correctness of the Court of Civil Appeals' judgment, turns on

the proper interpretation of the written contract under which Adams was doing the concrete work. The relevant provisions are as follows:

Article V. The Contractor [Adams] shall effectually secure and protect its work and shall bear and be liable for all loss or damages of any kind which may happen to the work or any materials to be incorporated therein at any time prior to the final completion and acceptance thereof. McCann Construction Company, Inc., shall not be responsible for any damage done to the work or property or [of] the Contractor, unless such damage shall be caused by the direct negligence of McCann Construction Company, Inc.

\*   \*   \*   \*   \*   \*

Article VIII. The Contractor shall protect, indemnify and save McCann Construction Company, Inc., and Owner harmless from any and all claims, suits and actions of any kind or description, for damage or injuries to persons or property received or sustained by any party or parties *through or on account of any act or in connection with the work of the Contractor* or its agents or servants or subcontractors, or any default or omission of the Contractor, or its agents or servants or subcontractors in the performance of this contract, or through the use of improper or defective materials or tools or on account of injury or damage to adjacent buildings or property occasioned by work under this contract, or through failure to give the usual requisite and suitable notices to all parties, whose persons, estates or premises may be, in any way, interested in or affected by the performance of this work, and at its own cost shall defend any and all suits or actions that may be brought against McCann Construction Company, Inc., or Owner by reason thereof, and in the event of the failure of the Contractor to defend such suits McCann Construction Company, Inc., shall have the right and power to defend same and charge all costs of such defense to the Contractor or its Surety.

McCann directs our attention to the italicized language quoted above. It then points out that the work being performed at the time of the injuries was that of pouring concrete, that the forms were constructed for Adams to pour concrete into, that the latter's contract could not be performed without the forms, and that the filling of the forms by Adams' employees was the immediate cause of their collapse. The injuries were thus received, we are told, through or on account of "an act or in connection with the work" of Adams within the meaning of the contract. We do not agree. McCann's liability arises from the fact that the accident was proximately caused by its own want of care, and there is no suggestion that Adams or anyone under its supervision or control was at fault in any way. We thus have a casualty that would not have occurred but for the negligence of the indemnitee and to which the indemnitor contributed in no way except by doing its work in a careful and prudent manner.

Texas follows the general rule that an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequivocal terms. It is not necessary for the parties to say, in so many words, that they intend to save the indemnitee harmless from liability for his own wrongs, but it is necessary for that intention to clearly appear when all the provisions of the contract are considered in the light of the circumstances surrounding its execution. This was pointed out in Spence & Howe Construction Co. v. Gulf Oil Corp., Tex.Sup., 365 S.W.2d 631, where we stated that:

\*   \*   \* Ordinarily, however, one does not contract against the results of his own negligence. Such agreements, except for insurance contracts, must be regarded as exceptional rather than usual in the majority of business transactions.

Before such indemnity contracts may be enforced it must clearly appear that the contracting parties intended that the indemnitor would be held liable for damages resulting from the negligence of the indemnitee.

\*  \*  \*  \*  \*  \*

In Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, this Court discussed the rule that an indemnity agreement will not protect the indemnitee against the consequence of his own negligence unless the obligation is expressed in unequivocal terms. The obvious purpose of this rule is to prevent injustice A contracting party should be upon fair notice that under his agreement and through no fault of his own, a large and ruinous award of damages may be assessed against him solely by reason of negligence attributable to the opposite contracting party. See, Perry v. Payne, 217 Pa. 252, 66 A. 553. Texas does not, however, follow the refinement of the rule which requires that the agreement, in order to effectually embrace the negligence of the indemnitee, should expressly so state.

\*  \*  \*  \*  \*  \*

The general rules relating to the construction of contracts are applicable to indemnity contracts. We agree with the statement of the Court of Civil Appeals that, "In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purposes of varying or adding to the contract but in order to find out the intention with which words are used."
\*  \*  \*

In some cases it is fairly easy to discern an intention to afford protection even against the consequences of the indemnitee's negligence. The intent is usually clear, for example, where one person undertakes to indemnify another against liability for injuries or damage caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality. When the indemnity agreement is expressed in these terms, the indemnitor ordinarily knows and certainly should be aware that he is assuming full responsibility for the particular premises or instrumentality. See Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775; Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, 226 S.W. 140; Stewart & Co. v. Mobley, Tex. Civ.App., 282 S.W.2d 290 (writ ref.).

The situation is somewhat different where both parties to the contract will be working on a project and the obligation to indemnify is expressed in general terms that simply purport to protect the indemnitee against liability arising out of acts or in connection with the work of the indemnitor. The indemnity provisions in this case are not part of a contract of insurance but are incident to an undertaking by a subcontractor to do certain concrete work for the prime contractor. Agreements of that nature are usually made primarily to protect the general contractor against loss or liability resulting from operations or physical conditions over which he has no control and which are under the control of the subcontractor. See North American Ry. Const. Co. v. Cincinnati Traction Co., 7th Cir., 172 F. 214. A stipulation in such a contract that refers merely to injuries or damage resulting from the acts or in connection with the work of the subcontractor does not in itself clearly indicate an intention to protect the general contractor against liability for a casualty caused solely by the latter's negligence. It will not be given that effect unless the other provisions of the contract fairly warrant the conclusion that the parties expected to shield the indemnitee even against the consequences of his own wrong.

■ The contract in the present case contains nothing to justify that conclusion.

Aside from the language upon which Mc-Cann relies, it purports to afford protection against liability arising from (1) any default or omission of Adams or its agents, servants or subcontractors in the performance of the contract; (2) injury or damage to adjacent buildings or property occasioned by work under the contract; or (3) through failure to give requisite and suitable notices to persons who might be interested in or affected by the performance of the work. None of these provisions fairly and clearly indicate an intention to protect the indemnitee against liability for damages caused solely by its own negligence, and it is our opinion that the general provision concerning injuries or damage received or sustained through or on account of an act or in connection with the work of Adams is not subject to the construction urged by McCann.

If there were any doubt in this respect, it would be dispelled by the provisions of Article V. Adams' duty to protect and secure the work and be responsible for "all loss or damages of any kind that may happen to the work" is there defined in terms fully as general and sweeping as those now in question. It is clear, however, that the parties did not contemplate that this stipulation would immunize McCann from liability for damage done by it to the work. They accordingly added a provision that McCann would not be responsible for damage done to the work unless caused by its direct negligence.

The indemnity agreement in *Spence & Howe,* which contained language similar to that in the present case, was held to protect the indemnitee against liability for its own negligence. There the accident was caused by negligence of the indemnitee's employee while operating a crane owned by the indemnitee, and the indemnitor was not at fault. As pointed out in the opinion, however, the indemnitor had supervision of the entire operation and was actively using the indemnitee's crane and employee to do the work it had undertaken to perform. We therefore held that the contract and the operations conducted in pursuance thereof could not be so divided as to make two operations, one conducted by the indemnitee and the other by the indemnitor. The contrary is true in the present case, and the accident here was caused solely by the fault of the indemnitee in performing an operation for which it was exclusively responsible and which was completed before the indemnitor began doing its work under the contract.

McCann also relies on Ohio Oil Co. v. Smith, Tex.Sup., 365 S.W.2d 621, where the contractor had agreed to save the owner harmless from any and all claims and damages of every kind arising out of or attributed, directly or indirectly, to the operations of the contractor. The contract was for workover operations on a well of the owner, and an employee of the contractor was injured when he fell from a test tank furnished by the owner for use in the operations. It was held that the indemnity undertaking mentioned above, which was fully as general as the one relied upon by McCann in the present case, entitled the indemnitee to protection against liability arising solely from its own passive negligence. That conclusion appears to be entirely sound even under the views here expressed, because it reasonably appeared from another provision of the contract that the parties intended to afford the owner rather broad protection with respect to injuries sustained by employees of the contractor. The latter provision was quoted in the opinion, but there is no suggestion that it was considered in determining the effect of the general indemnity clause.

The opinion in *Ohio Oil* might thus leave the impression that the rights of the parties to an indemnity agreement may properly be determined by examining only one provision of the contract and then deciding that the words used can be construed to include the liability for which indemnity is sought. In this respect it is inconsistent with the views here expressed and with the opinion in *Spence & Howe,* which was handed down the same day. To

that extent the opinion in *Ohio Oil* will not be followed, because to do so would often lead to harsh and unjust results that were not contemplated by the parties when the agreement was made. It would also place a premium on vague and uncertain language that might trap an unwary subcontractor who failed to obtain a legal opinion on every printed form submitted to him by a general contractor. If we are to do anything more than give lip service to the rules declared in *Spence & Howe*, a general contractor who wishes to be protected against liability for damage caused solely by his own negligence must arrange for the obligation to be expressed in clearer terms than those used in the agreement now in question.

The judgment of the Court of Civil Appeals · is reversed, and that of the trial court is affirmed.

Dissenting opinion by CALVERT, C. J., in which STEAKLEY, McGEE and DENTON, JJ., join.

CALVERT, Chief Justice (dissenting).

I respectfully dissent.

In what appears from the closing paragraph of the majority opinion to be an overly zealous effort to relieve one of the parties from the normal ·and readily foreseeable consequences of a contract voluntarily entered into, the court has: (1) misinterpreted and, in effect, overruled one of our former opinions which cannot be distinguished; (2) abandoned usual and customary rules of contract construction; (3) nullified a broadly and carefully written contract of indemnity; (4) left bench and bar completely in the dark as to what is meant by a contract of indemnity for damages incurred for injuries sustained "in connection with the work" of an indemnitor, and (5) brought this state, for all practical purposes, without so stating and contrary to all of our previous declarations, into the group of jurisdictions in

which it is held in situations of this character that contracts of indemnity will be held to indemnify against the consequences of the indemnitee's own negligence only if the contract expressly so provides. While these matters will not be dealt with separately, they will be self-evident from my analysis of the problem, the prior opinions of this and other courts, and the court's opinion in this case.

The problem posed in this case is not a new one to this court. It was presented in Crews Well Service v. Texas Co., 358 S. W.2d 171 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e., with per curiam opinion, 360 S.W.2d 873), before we faced up to it in Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex.Sup.1963).

In Crews Well Service v. Texas Co., supra, one of Crews' employees was killed while in the performance of his duties under a well work-over contract in which Crews agreed to indemnify Texas Company for damages paid on account of "injury to or death of Contractor, his agents and his employees * * * arising out of or *in connection with the performance of said work* * * *."[1] The court of civil appeals rejected a Crews' argument that the death was caused by Texas Company's negligence and that the parties did not intend to provide indemnity in that situation, stating (358 S.W.2d 173):

"When the ordinary rules of construction are here applied, it is clear that the parties to the indemnity contract intended that appellant fully protect, indemnify and hold appellee harmless against all liability and damages resulting from the work-over job undertaken by appellant, regardless of how it arose or what negligence caused it."

We reserved the question by our per curiam opinion in 360 S.W.2d 873.

With the question squarely presented in *Spence & Howe*, we granted a writ, took

---

1. Emphasis mine throughout unless otherwise indicated.

dead aim at the "in-connection-with-the-work" problem, and upheld the right of a general contractor, under that contract language, to indemnity for the consequences of its own negligence.

The majority seek to distinguish our decision in *Spence & Howe* by completely reversing the logic of the opinion in that case. They recognize that we held in that case that the subcontractor was required to indemnify the general contractor for the consequences of the general contractor's negligence, but imply that this was solely because the subcontractor "had supervision of the entire operation and was actively using the indemnitee's crane and employee to do the work it [the indemnitor] had undertaken to perform." I do not agree with that analysis of *Spence & Howe*. In my opinion the record does not support it. Our opinion in the case reflects on its face that the subcontractor's effort to relieve itself of liability under its "in-connection-with-the-work" contract was keyed to its contention that "in legal effect, there were two operations going on *simultaneously*—one being conducted by Gulf [indemnitee] with its crane and operator and another by Spence & Howe [indemnitor], consisting of setting piling in place, etc."; and that the injury to the indemnitor's employee occurred "in connection with the work" of the indemnitee and not "in connection with the work" of the indemnitor. As is not unusual in the decision-making process, we simply pointed out that the supposed factual basis for the indemnitor's legal conclusion did not exist; that there were not two separate operations going on simultaneously. 365 S.W.2d 636–637. We did *not* hold, nor did we imply, that we would agree with the indemnitor's legal conclusion if the facts had been as it sought to make them. Indeed, our holding in that case was exactly contrary to the majority's holding here. The record in *Spence & Howe*, as reflected in our opinion in that case, shows conclusively that negligence solely on the part of the indemnitee was the cause of the injury to the employee of the indemnitor, a fact which the majority seem to say in this case

precludes indemnification. As a matter of fact, the record in this case presents a stronger case for indemnification than did the record in *Spence & Howe*.

While the majority quote extensively from the *Spence & Howe* opinion on general rules to be followed in interpreting indemnity contracts, they fail even to notice the really significant parts of the opinion which will be found in the following quotations (365 S.W.2d 637):

"* * * In the present case, Cummings was injured as a result of an action *directly connected with and growing out of the operations covered by the contract* of which the indemnity agreement was a part.

"* * * As above pointed out, Spence & Howe in this portion of the contract agreed 'to be responsible for and to indemnify and save Gulf harmless *from all loss or damage* and any or all claims arising by reason of accidents, injuries or damage *to any persons or property in connection with such work.'*

"This phrase clearly means that Spence & Howe assumed liability for any and all damages growing out of the work covered by the contract,—namely the setting of piling for six propane tanks."

By the quoted language the court was saying in words too plain to be misinterpreted or misunderstood that by their contract the parties clearly intended that the contractor, Spence & Howe, would indemnify Gulf for all damages paid for injuries sustained in connection with their work in the setting of piling, without regard to whose negligence may have caused or contributed to the injuries and even if they were proximately caused solely by Gulf's negligence, which, in the particular instance, they were. A diametrically opposite holding is now being made in this case.

In reaching the conclusion that the indemnity clause in the instant contract does not in unequivocal terms express Adams' obligation to indemnify McCann against

consequences of the latter's negligence, the majority read two of the provisions of the indemnity agreement as though they were not separated by the disjunctive "or". For example, the discussion of the problem is opened with this sentence: "The injuries were thus received, we are told, through or on account of 'an act or in connection with the work' of Adams within the meaning of the contract." The same language is used in other places in the majority opinion, thus creating the impression that the problem is whether there is an agreement to indemnify for injuries received through an act of Adams committed in connection with its work. In this respect the opinion is misleading. McCann insists in its answer to the application for writ of error that the language in the indemnity clause is expressly stated in the disjunctive. This being so, the conditions are alternative; and the question before us is obviously *not* whether the injuries to the employees were received through or on account of "an act" of Adams, but whether, alternatively, they were received "in connection with the work" of Adams. Here is the crux of the entire case. Here, too, is the provision which determines whether this case is ruled by *Spence & Howe,* as I have analyzed it, and other cases decided on the same legal theory, or whether it is ruled by decisions based upon different contract provisions.

At this point, I take particular notice of our decision in Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.Sup.1963). We decided that case on the same day we decided *Spence & Howe* and cited it as authority for our decision in *Spence & Howe.* I am now convinced that Ohio Oil Co. v. Smith was incorrectly decided and should be distinguished from *Spence & Howe* and from the instant case.

The indemnity provision in the contract between Ohio Oil Company and Smith was contained in Section 15, captioned "OHIO INDEMNIFIED," and provided that Smith would indemnify Ohio for any damages it was required to pay "for injury to

or death of any person or persons * * * *arising out of or attributed, directly or indirectly, to the operations of Contractor [Smith] hereunder."* We held that this provision was "broad enough to cover claims and damages caused by the sole negligence of Ohio." I am now satisfied, on the basis of decisions to be cited and analyzed, infra, that a contrary decision would have been more logical.

Although there are other persuasive decisions, to be cited and analyzed later, it seems to me that a proper evaluation of this case can be made by a consideration of the Texas decisions in Standard Oil Co. of Texas v. Wampler, 218 F.2d 768 (5th Cir. 1955); Westinghouse Electric Corp. v. Childs-Bellows, 352 S.W.2d 806 (Tex.Civ. App.—Fort Worth 1961, writ ref'd); Crews Well Service v. Texas Company, 358 S.W.2d 171 (Tex.Civ.App.—San Antonio 1962, writ ref'd n. r. e.); Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex.Sup.1963); Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5th Cir. 1963), and Sinclair Oil & Gas Co. v. Brown, 333 F.2d 967 (10th Cir. 1964). The decisions in these cases demonstrate that when the contractual obligation may reasonably be said to require indemnification for damages proximately caused by acts or conduct of a subcontractor in the performance of his work, the contract will not be held to require indemnity for injuries which are proximately caused solely by the negligence of the general contractor. Thus, in cases in which the general contractor's negligence was the sole proximate cause of injuries, indemnity was denied in *Wampler,* in which the provision was for indemnity for injuries or damages "that may arise from Contractor's operations hereunder * * * *"; in *Childs-Bellows,* in which the provision was for indemnity for damages "growing out of, or incident to or resulting from the performance [by the subcontractor] or failure to perform the Work * * *"; and in Sinclair Oil & Gas Co. v. Brown, in which the provision was for indemnity for damages "resulting from the operations of

Contractor hereunder * * *." On the other hand, when the contractual obligation is more broadly stated as requiring indemnity for injuries sustained "in connection with the work" of the subcontractor, or similar provisions, the contract will be held to require indemnity for injuries proximately caused either by the concurrent negligence of the general contractor or solely by his negligence. Thus, as heretofore pointed out, indemnity was required in *Crews Well Service* in which the provision was for indemnity for injuries or damages "in connection with said work * * *"; in *Spence & Howe* in which the provision for indemnity was for injuries or damages "arising * * * in connection with such work"; and in *Alamo Lumber Company* in which the provision for indemnity was for injuries or damages " * * * which arise[s] out of or in connection with the activities of Contractor * * *."

The *Alamo Lumber Company* case by the Court of Appeals for the Fifth Circuit and Sinclair Oil & Gas Co. v. Brown by the Court of Appeals for the Tenth Circuit rather graphically illustrate the distinction in the two lines of cases. The opinion in the first case discloses that Alamo contracted to install cabinets in the chemical laboratory of a Warren plant and agreed to indemnify Warren for damages incurred for "injuries to or death of persons, * * * which arises out of or in connection with the activities of Contractor [Alamo] * * *." In connection with its work, Alamo disconnected and left open a pipe for sewer drainage. Waste gas was discharged through the pipe by Warren and injured two of Alamo's employees who recovered judgments against Warren based on its negligence. The court, citing its own opinion in the Florida case of American Agricultural Chemical Co. v. Tampa Armature Works, Inc., 315 F.2d 856 (5th Cir. 1963), upheld Warren's right to indemnity with the following holding:

"The injury in the instant case arose out of the installation of cabinets around the unstopped sewer drain pipe. This was an operation embraced by the contract. *Giving the words 'in connection with' their natural and ordinary meaning*, as in American Agricultural Chemical Co. v. Tampa Armature Works, *the injuries were sustained in connection with Alamo's contract with Warren.* Liability for the injuries was therefore within the scope of the indemnity clause."

In Sinclair Oil & Gas Co. v. Brown, Sinclair sued Brown, a drilling contractor, for attorney fees and costs incurred in defending a suit against it by a Brown employee who was injured while performing services pursuant to a drilling contract between Brown and Sinclair. The contract provided that Brown would hold Sinclair "harmless from any and all liability for damages to the person * * * *resulting from the operations of Contractor hereunder.*" The court held that the quoted language did not clearly indicate an intent to indemnify Sinclair against the consequences of its own negligence, and said:

"Sinclair relies on Ohio Oil Company v. Smith, Tex., 365 S.W.2d 621, and Spence & Howe Construction Company v. Gulf Oil Corp., Tex., 365 S.W.2d 631, to sustain its position, but the language used in the indemnity agreements in those cases was so much broader than that found in the indemnity agreement in the instant case, that they have no application here."

I have said that I now think Ohio Oil Co. v. Smith was incorrectly decided. My reason for so concluding is that the language of the indemnity agreement in that case—"*arising out of or attributed, directly or indirectly, to the operations of Contractor hereunder*"—rather clearly places it in the category of *Wampler, Childs-Bellows* and Sinclair Oil & Gas Co. v. Brown, rather than in the category of *Spence & Howe, Crews Well Service* and *Alamo Lumber Company.*

The distinction made in the foregoing series of cases is soundly based in both

logic and law. Except in a narrow, non-delegable duty situation (blasting), not present here, a general contractor is *never* liable in this jurisdiction for injuries to third persons caused by the work activity of subcontractors *unless its negligence was a proximate cause of the injuries*. Hence, the only reason for including a provision in such contracts for indemnity for general contractors is to protect them from the consequences of their own negligence. It follows that by inclusion of such a provision in their contracts, the parties intend either to provide for indemnity against the consequences of the negligence of the general contractor, or, alternatively, that the provision shall be meaningless. Surely, we are not prepared to hold, contrary to all established contract construction law, that the parties intend the provision to be meaningless.

By providing for indemnity for damages "that may arise from Contractor's operations hereunder * * *." (*Wampler*); or, "growing out of, or incident to or resulting from performance [by the subcontractor] or failure to perform the Work * * *." (*Childs-Bellows*); or "resulting from the operations of the Contractor hereunder * * *." (Sinclair Oil & Gas Co. v. Brown), the general contractor protects itself against liability for injuries which might be proximately caused by the concurrent negligence of itself and the subcontractor, but not against liability for injuries which might be proximately caused solely by its negligence or by the concurrent negligence of itself and a third person. In the instant case, protection for McCann against its negligence concurring with that of Adams was contained in the provision for indemnity for injuries sustained "through or on account of any act * * * of the Contractor [Adams & Son]." Having thus provided for indemnity for injuries proximately caused by the concurrent negligence of the parties, the added provision for indemnity for injuries sustained "in connection with the work" of the subcontractor was intended by the parties either to add indemnity coverage in other situations, or, once again, to be meaningless. I suggest that the added language was not intended to be meaningless, and that it is broad enough clearly and unequivocally to provide indemnity for injuries proximately caused by the concurrent negligence of the general contractor and a third person or solely by the negligence of the general contractor; and I suggest, further, that it would be foolish to hold that it was intended to provide indemnity in the first situation but not in the second.

There are cases from other jurisdictions which, with virtual unanimity, offer firm support for the distinction I have suggested and for the view that the contract in this case should be held to provide indemnity for McCann.

In St. Paul Mercury Indemnity Co. v. Kopp, 121 N.E.2d 23 (Ohio App.1954), the contract provided for indemnity for loss "growing out of *or in any way connected with the performance of the work awarded to Contractor."* The court held:

"* * * Although no specific mention is made of the negligence of the Utility Company, yet the contract, when it calls for indemnity for any and all loss in any way connected with the performance of the work * * * clearly includes loss arising as a result of such negligence. * * *

"We therefore determine that by the plain, unambiguous terms of the contract * * * [indemnity was required]."

Accord: New Amsterdam Casualty Company v. Kilroy Structural Steel Company, 159 N.E.2d 797 (Ohio App.1959), in which indemnity was provided for damage "caused or alleged to have been caused by the subcontractor, *or incidental to execution of work under this contract* * * *."

In Fosson v. Ashland Oil & Refining Company, 309 S.W.2d 176 (Ky.1958), the contract provided for indemnity from damages "growing out of *or incurred in the prosecution of said work* * * *." In

holding that the contract required indemnity against the consequences of the indemnitee's own negligence, the court said:

" * * * The use of the word 'or', as italicized in the first quoted provision of the contract, rather than the word 'and' convinces us that the contractual intent was that the owner be held harmless from all liability incurred in the prosecution of the work or later growing out of the contractor's acts or omissions. * * *

" * * * It is true that when there is a doubt as to the meaning of an indemnity clause the construction should be against the contention that the contract was meant to indemnify against an indemnitee's own negligence. We have said that every presumption is against such intention. * * *

" * * * Unless there was required specifically the statement 'including the owner's own negligence,' we can hardly envision a more inclusive indemnity provision. * * * "

In Smoke v. Turner Construction Company, 54 F.Supp. 369 (D.Del.1944), the contract provided for indemnity by a subcontractor for any and all damages "growing out of or resulting from the execution of the work provided for in this contract, *or occurring in connection therewith* * * *."" In upholding the right to indemnity for the consequences of the indemnitee's own negligence, the court said:

" * * * The magic words of the agreement fixing liability for an injured employee are 'occurring in connection therewith'. * * *

*"If this agreement is held not to apply to Turner's negligence, it means nothing, for Turner could be liable only for negligence.* * * *

"Struse strenuously argues that a construction that its undertaking applies to Turner's negligence is unnatural for it would mean that it as a small subcontractor on the construction of one of the country's larger modern hospitals would assume liability out of all proportion to the value of its contract. It may well be that this was, in truth, an unwise undertaking for Struse to assume, but that circumstance alone is not a persuasive argument against the bald fact that it did assume such a liability."

In Turner Construction Company v. Belmont Iron Works, 158 F.Supp. 309 (E.D. Pa.1957), an employee of a subcontractor was killed as a result of the general contractor's negligence. The employee's widow recovered a judgment against the general contractor for damages, and the general contractor sued the subcontractor on an agreement which provided for indemnity for injuries "growing out of or resulting from the execution of the work provided for in this Contract *or occurring in connection therewith.*" The subcontractor sought to defeat liability on the ground that it had nothing to do with the dangerous condition of the premises responsible for the death. In rejecting the defense, the court said:

" * * * There might be ground for the argument (though I do not so decide) if the clause had merely said injury 'growing out of or resulting from the execution of the work' and stopped there. However, the clause goes on 'or occurring in connection therewith.' Plainly, the parties meant to add something to the concept of an injury caused by or resulting from the work."

In Buffa v. General Motors Corp., 131 F.Supp. 478 (E.D.Mich.1955), General Motors was sued by an employee of Utley, a contractor, for damages for injuries sustained on the job as a result of the negligence of a General Motors' employee. General Motors filed a third party action against Utley on an indemnity contract which provided that Utley "assume[d] all risks of damage or injury to property or persons used or employed on *or in connection with the work.* * * *"" In reject-

ing Utley's contention that the contract was not intended to indemnify General Motors against the consequences of its own negligence, the court said:

"\* \* \* The contract clearly indicates that the undertaking of Utley was, *in part at least*, to indemnify General Motors against responsibility for injuries to Utley's employees used on the job in question, regardless of whoever be at fault. Doubtless, more specific language could have been chosen, but this fact, to a certain extent, is true in every instance of draftsmanship and this argument cannot serve to detract from the clear and unequivocal meaning of the words used."

In Russell, for Use of Continental Cas. Co. v. Shell Oil Company, 339 App. 168, 89 N.E.2d 415 (1949), a case on all-fours with the instant case on the essential facts, Russell contracted to paint the light poles on the premises of a Shell filing station. While Russell's employee was working from a ladder leaning against a light pole, the pole and its concrete base pulled out of the earth and fell, injuring the employee. Shell's prior negligence was thus the sole proximate cause of the employee's injury. Russell's workmen's compensation insurer sued Shell to recover sums it had paid. Shell defended on the ground that its contract with Russell provided for its indemnification from claims and liability "resulting from *or arising in connection with any of Contractor's operations* \* \* \*." The trial court's judgment for Shell was affirmed, the court saying:

"\* \* \* It seems clear that the injury to Campbell arose in connection with the 'contractor's operations.' As defendant·argues, \* \* \* 'the indemnifying agreement is expressed in clear and explicit language and the intention of the parties is indicated in unequivocal terms.' "

Accord: Northern States Company v. A. Finkl & Sons Company, 8 Ill.App.2d 419, 132 N.E.2d 59 (1956), in which indemnity was provided for injuries or ˙damages

"arising directly or indirectly from *or in connection with work* performed or to be performed *under this contract.*"

In Tyler v. Dowell, Inc., 274 F.2d 890 (10th Cir. 1960), a drilling contractor agreed in its contract with Phillips Petroleum Company to indemnify and hold Phillips harmless for "damages to persons and property which may occur *in the course of contractor's operations.*" In rejecting a contention that the contract was not intended to indemnify Phillips against the consequences of its own negligence, the same court which later decided Sinclair Oil & Gas Co. v. Brown, supra, said:

"\* \* \* From this 'all-embracing language,' \* \* \* it is fair to say that the parties clearly intended to exempt and indemnify Phillips from any liability arising out of the performance of the contract, even against its own negligence. \* \* \*"

A number of cases in this general area are collated in an annotation in 27 A.L.R. 3d 663, and an examination of the annotations discloses that in those jurisdictions in which an express provision against the consequences of one's own negligence is not required, "in-connection-with-the-work" provisions are held, virtually without exception, to provide such indemnity.

The majority opinion speaks several times of a situation in which a general contractor seeks indemnity against liability for damage "caused solely by his own negligence" and indicates that is the situation in the instant case. I suggest such is not the situation here; the claim is to indemnity for damage as to which McCann's negligence was the sole *proximate* cause, but not the sole cause. There is no evidence that the forms, however defective they may have been, would have fallen and injured the employees if the wet concrete had not been poured into them. The pouring of the concrete into the forms "in connection with the work" of Adams was a cause in fact of the injuries. That should be too plain and clear for cavil; and the

right to indemnity in that situation is not dependent on the cause in fact being also a proximate or legal cause of the injuries.

The majority opinion carefully limits its holding to situations in which the indemnitee's negligence is the sole cause of injuries; but there is no sound basis for holding that while *not* providing for indemnity in that situation, the contract *will* provide for indemnity when the indemnitee's negligence concurs with the negligence of the indemnitor or of a third person as a proximate cause of injury. The net effect of the majority's holding, therefore, is to nullify "in-connection-with-the-work" provisions as a basis for protecting general contractors and premises owners against liability.

The majority use the provisions of Article V of the contract as demonstrating that the "in-connection-with-the-work" provision in Article VIII is too general to provide indemnity for the consequences of McCann's negligence. The subject matter of Article V is wholly unrelated to the indemnity provisions of Article VIII; Article V relates to the rights and duties of the parties to each other and Article VIII relates to their joint or separate liabilities to third persons. The majority seem to say that because the parties thought it necessary to qualify the general provision in Article V with a more specific provision, they should have done the same with the general provision of Article VIII if they intended it to be effective. This is, to me, a new rule for the construction of contracts. Moreover, it is less than logical. The specific provision in Article V qualifying the general provision is in the nature of a limitation on, or exception to, the general provision and necessarily had to be in more specific language. The situation with respect to the general language in Article VIII is obviously not comparable.

While holding the "in-connection-with-the-work" provision ineffective for the only logical purposes the parties could have intended it to serve, the majority give no inkling of how a general contractor may provide for indemnity from a subcontractor for the consequences of his own negligence which is the sole proximate cause, or concurs with the negligence of a third party as a proximate cause, of injury to another. As demonstrated by decisions cited supra, a provision for indemnity for injuries "growing out of the operations or acts" of the subcontractor is too narrow to provide it. Cf. City of Beaumont v. Graham, 441 S.W.2d 829, 838 (Tex.1969). By this decision, a provision for indemnity for injuries sustained "in connection with the work" of the subcontractor is too general and broad to provide it. In Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775 (1957), we held that, to provide it, the parties need not "say in so many words that they intend to protect the indemnitee against liability for negligence." If the decision of the majority in this case is to stand, it is my opinion that we should change the rules of the game as laid down in *Friedman* and join those jurisdictions which require as a basis for indemnity against the consequences of one's own negligence that the contract expressly provide for it, thus providing contracting parties with some measure of predictability of their contract rights.

I would affirm the judgment of the court of civil appeals.

STEAKLEY, McGEE and DENTON, JJ., *join in dissent.*

## ON MOTION FOR REHEARING

Rehearing denied.

CALVERT, Chief Justice.

The decision in this case establishes not only bad contract law but also bad summary judgment law.

While the majority has carefully avoided stating that the indemnity provision in the instant contract is ambiguous, or that its meaning is doubtful, and thus that it is subject to explanation by extrinsic evidence, counsel for Adams & Son has been less cautious. In Adams' answer to McCann's

motion for rehearing we find this argument:

"While the language of this contract *can be* construed to include the sole negligence of the indemnitee, it is difficult for Petitioner to see how it must not be admitted that the language can reasonably be construed the other way. The language is so general as to *obscure* the intent. It is *not easily perceived or understood.* It has two or more *possible* meanings."[1]

Counsel thus concedes, indeed expressly stipulates, that the meaning of the indemnity provision is both doubtful and subject to more than one reasonable construction. The provision is, therefore, ambiguous, whether tested by the rule applied in Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951), or by the somewhat more liberal rule applied in Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597 (1959).

I am strongly committed to the view that the "in-connection-with-the-work" provision of the contract requires in clear and unequivocal language that Adams indemnify McCann in the instant case. I suggest that if Adams had contracted with each of his three employees to pay $50.00 weekly, in addition to compensation benefits, during any period of total disability sustained as a result of injuries incurred "in connection with the work" undertaken by the contract, there is not a single judge on this court who would hesitate to hold in the instant fact situation that the obligation to pay was stated in clear and unequivocal language. The meaning of the language cannot be clear and unequivocal in the hypothesized case and unclear and equivocal here. However, if that be not so, then surely the provision which, according to Adams, "has two or more possible meanings," "is not easily perceived or understood," and "can be construed to include the sole negligence of the indemnitee," is subject to clarification and explanation by resort to extrinsic evidence.

We said in Mitchell's, Inc. v. Friedman, 157 Tex. 424, 303 S.W.2d 775, 778 (1957), without equivocation, that "[i]n determining the rights and liabilities of the parties [to an indemnity contract], . . . their intention will first be ascertained by rules of construction applicable to contracts generally"; and, even more recently, we stated just as emphatically in Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631, 637 (Tex.1963), that "[t]he general rules relating to the construction of contracts are applicable to indemnity contracts." The majority opinion in this case quotes the statement from *Spence & Howe* with approval.

If we are to do more than give lip service to our own most recent declarations concerning the rules to be followed in the construction of indemnity contracts, we should first recognize that the primary object in construing such contracts, as with all contracts, is to seek and give effect to the intention of the parties. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341 (1957). This rule is too well established to require citation of additional authorities. If the intention of the parties is not made clear by the contract's language, that is, if its meaning is doubtful or ambiguous, the burden is on one seeking to give it a particular meaning to show by competent extrinsic evidence that the parties intended it to have that meaning. Thus, in a conventional trial the plaintiff would lose if he failed to discharge the burden. See Neece v. A. A. A. Realty Co., 159 Tex. 403, 322 S.W.2d 597 (1959). But the parties to this suit have not had a conventional trial. Each of the parties moved for summary judgment on the wording of the contract, and neither party tendered summary judgment evidence as to its meaning or the parties' intention. Granting for the sake of argument that the trial court erred in rendering summary judgment for McCann, this does not mean that summary judgment should be rendered for Adams.

1. Emphasis Counsel's.

The summary judgment for Adams is improper and clearly contrary to our recent carefully considered summary judgment decisions, unless the majority is prepared to hold that our courts will not concern themselves with intention of the parties in the construction of ambiguous indemnity contracts, and that to be entitled to summary judgment the indemnitor need not discharge the burden imposed on summary judgment movants in other contract cases. In Gibbs v. General Motors Corp., 450 S.W. 2d 827 (Tex.1970), and Torres v. Western Casualty and Surety Co., 457 S.W.2d 50 (Tex.1970), we gave effect to the literal wording of Rule 166–A, Texas Rules of Civil Procedure, and held that a defendant is not entitled to summary judgment unless he establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of a plaintiff's cause of action; and in Prestegord v. Glenn, 441 S.W.2d 185 (Tex.1969), second appeal, Glenn v. Prestegord, 456 S.W.2d 901 (Tex.1970), we made quite clear that the announced rule obtains even though it may appear that a plaintiff will not be able to raise a fact issue on a conventional trial. These are the rules which would control if we were concerned with the interpretation of other contracts, and according to our own pronouncements they should be applied to this indemnity contract.

To test the soundness of the judgment rendered for Adams by this court, I pose these questions: If a conventional trial had been held and counsel for Adams had stipulated that he agreed that he would indemnify McCann for all damages paid for injuries which were proximately caused solely by McCann's negligence, and that the doubtful language of the contract was intended to express that agreement, would we hold, nevertheless, that an instructed verdict against McCann was in order because the language of the contract did not state the parties' agreement in clear and unequivocal language? In this summary judgment proceeding, if Adams had testified on deposition, or had answered a request for an admission, that the parties agreed that Adams would indemnify McCann for all damages paid for injuries which were proximately caused solely by McCann's negligence, and that the doubtful language was intended to express that agreement, would we hold, nevertheless, that summary judgment should be rendered for Adams because the language of the contract did not state the parties' agreement in clear and unequivocal language? Unless we can answer "yes" to these questions, Adams has not discharged its burden of showing as a matter of law that there is no issue of fact as to the intention of the parties in including the "in-connection-with-the-work" provision in the contract, the judgment rendered herein for Adams is improper and this cause should be remanded to the trial court for a conventional trial.

STEAKLEY, McGEE and DENTON, JJ., join in this dissent.