IN THE SUPREME COURT OF TEXAS














IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-1008

════════════

 

STORAGE & PROCESSORS,
INC. AND LEONEL GUERRERO,

Petitioners

 

v.

 

RAMON REYES, Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Sixth District of Texas

════════════════════════════════════════════════════

 

 

Argued October 29, 2003

 

 

Chief Justice Phillips delivered the
opinion of the Court.  

 

Justice Schneider filed a concurring
opinion.

 

 

In
this case, we must decide whether an employer must satisfy the fair notice
requirements of the express negligence doctrine and conspicuousness when it
enrolls employees in a non-subscriber workers=
compensation benefits plan.  Because we
hold that employers must, we affirm the judgment of the court of appeals.  86 S.W.3d 344.

Storage
& Processors, Inc. (S&P) is a non-subscriber to the Texas Workers= Compensation Act.  Tex.
Lab. Code § 401.001.  On October 22, 1993, Ramon Reyes signed up for a benefits program
(Athe plan@)
offered by S&P to provide him with medical care and wage continuation
benefits if he were injured on the job. 
Reyes did sustain such an injury on April 13, 1995, when S&P=s employee, Leonel
Guerrero, drove over and severed Reyes=
foot with a forklift.  After accepting
almost all available benefits under the plan, Reyes sued S&P and Guerrero
for negligence.

S&P
and Guerrero both moved for summary judgment, arguing that Reyes waived his
common-law right to sue by accepting the benefits plan and that he ratified
that waiver by accepting payments under the plan.  The trial court agreed and granted the
motion.  The court of appeals reversed,
holding that the plan violated public policy and thwarted the legislative
intent of allowing employers to limit their liability only if they provided
subscriber-level benefits.  Reyes v. Storage & Processors, Inc., 995 S.W.2d 722
(Tex. App. B San
Antonio 1999, pet. denied).  The
case was still pending in the trial court on remand when this Court held that
agreements by workers to limit employers= liability in exchange for
non-subscriber benefits plans were not prohibited by law.  Lawrence
v. CDB Servs., Inc., 44 S.W.3d 544, 551B53
(Tex. 2001).  After we decided Lawrence,
S&P and Guerrero filed a second motion for summary judgment, which again
the trial court granted.

On
appeal, Reyes argued that he had been induced to sign the release by fraud,
misrepresentation, or mistake.  The court
of appeals refused to consider these points because Reyes had not raised them
in the trial court.  86
S.W.3d at 348.  Reyes also
contended that the liability release in the plan did not satisfy the two fair
notice requirements of the express negligence doctrine and
conspicuousness.  Id.  The court of appeals agreed with these arguments,
reversing the judgment of the trial court and remanding the case for trial.  Id. at 349.  S&P and
Guerrero then petitioned this Court for review. 

A
contract which fails to satisfy either of the fair notice requirements when
they are imposed is unenforceable as a matter of law.  See Dresser Indus., Inc. v. Page
Petroleum, Inc., 853 S.W.2d 505, 509B10
(Tex. 1993); see also U.S.
Rentals, Inc. v. Mundy Serv. Corp., 901 S.W.2d
789, 792 (Tex. App.BHouston
[14th Dist.] 1995, writ denied).  One
fair notice requirement, the express negligence doctrine, requires that Athe intent of the parties must be specifically stated in the four corners of the
contract.@  Ethyl Corp. v. Daniel Constr. Co., 725 S.W.2d 705, 707 (Tex. 1987).[1]  The other requirement, of conspicuousness,
mandates Athat
something must appear on the face of the [contract] to attract the attention of
a reasonable person when he looks at it.@  Dresser, 853 S.W.2d at 508 (quoting Ling
& Co. v. Trinity Sav. & Loan Ass=n, 482 S.W.2d 841, 843 (Tex. 1972)).  Language may satisfy the conspicuousness
requirement by appearing in larger type, contrasting colors, or otherwise
calling attention to itself.  Littlefield v. Schaefer, 955 S.W.2d 272, 274B75 (Tex. 1997).  However, if both contracting parties have
actual knowledge of the plan=s
terms, an agreement can be enforced even if the fair notice requirements were
not satisfied.  Dresser, 853
S.W.2d at 508 n.2 (citing Cate v. Dover
Corp., 790 S.W.2d 559, 561 (Tex. 1990)). 


Both
parties concede that our decision in Lawrence governs this case.  Although the Legislature ten weeks later
amended the Labor Code to prohibit pre-injury waivers,  Tex. Lab. Code § 406.033(e), Lawrence
remains the law for those claims, like Reyes=,
brought by workers who both signed non-subscriber agreements and suffered
injury before June 17, 2001.  But the
parties disagree about whether Lawrence requires the fair notice
requirements to be applied to non-subscriber plans.  Reyes emphasizes that this Court in Lawrence
conducted a fair notice analysis in a separate section of the opinion after we
held that public policy did not automatically void such waivers.  In Lawrence,
indeed, we stated that A[the
worker=s]
pre-injury release of claims . . . can be enforced
only if it meets two fair notice requirements.@  Lawrence,
44 S.W.3d at 553. 
After discussing the fair notice requirements in Lawrence,
we concluded that A[the
employer=s]
election meets both the express‑negligence and fair‑notice
requirements.@  Id. at 554.

S&P
and Guerrero dismiss this analysis as dicta. 
Lawrence, they say, did not actually hold that the requirements
always apply to non-subscriber agreements, and the Court states elsewhere in
its opinion that such agreements do not shift the risk of on-the-job injuries.  Id. at 550.  

It
is true that we were not squarely confronted with the fair notice requirements= application in Lawrence.  There, the employer conceded application of
the fair notice requirements, arguing only that the agreement satisfied both requirements.  Without analysis of why the fair notice
requirements actually applied, we applied them and found they were satisfied. 

In
this case, S&P and Guerrero do contest the applicability of the fair notice
requirements.  Whether or not Lawrence
decided the issue, it is now squarely before us.  S&P and Guerrero say that applying these
requirements would conflict with Lawrence=s
disapproval of courts basing their decision on how benefits under a particular
plan might compare with those available under workers=
compensation.  Id. at
551.  But requiring all
non-subscriber plans to satisfy the fair notice requirements would not require
judicial comparison of benefits, merely judicial evaluation of the legality of
the agreements. 

S&P
and Guerrero also claim that, even if Lawrence suggests otherwise, the
fair notice requirements should not apply here because the risk shifting in
non-subscriber benefit plans is not as complete or extraordinary as the few
other contracts to which we apply those requirements.  This Court, they point out, has never applied
the fair notice requirements to anything other than an extraordinary shifting
of risk, such as indemnifying a party from the consequences of its own
negligence, Ethyl Corp., 725 S.W.2d at 707, or releasing Aa party in advance of liability for its
own negligence.@  Dresser, 853 S.W.2d at
507.  Short of such circumstances,
we have resisted expanding the fair notice requirements.  See Green Int=l, Inc. v. Solis, 951 S.W.2d 384,
387 (Tex. 1997) (fair notice requirements not applicable to
no-damages-for-delay clause); Getty Oil Co. v. Ins. Co. of N. Am., 845
S.W.2d 794, 806 (Tex. 1992) (express negligence doctrine not applicable to
insurance-shifting agreement).

To
apply the doctrine to an agreement which does anything less than totally
exculpate a party of the consequences of its own negligence, S&P and
Guerrero argue, would radically expand the doctrine.  As one court recently opined, A[t]he express negligence doctrine is
inapplicable [to a non-subscriber benefits plan] because neither the benefit
agreement nor the arbitration agreement contained therein attempts to relieve
[the employer] of the consequences of its negligence.  To the contrary, [the employee=s] >waiver= and >release= obligated [the employer] to pay plan
benefits regardless of its negligence.@  In re H.E. Butt Grocery Co., 17 S.W.3d
360, 378 (Tex. App.BHouston
[14th Dist.] 2000).

We
recognize that waivers of liability signed in exchange for non-subscriber plans
do not involve the same extraordinary risk-shifting as releases and indemnity
agreements.  Indeed, such plans provide
immediate and certain benefits to injured workers.  Lawrence,
44 S.W.3d at 550. 
But the law has long accorded special status and given special
protection to workers, just as this Court did in Lawrence when we
assured ourselves that the agreement satisfied the express negligence doctrine
and that the releasing language was conspicuous.  Id. at 553–54.  Thus,
workers=
compensation settlements are one of the very few types of settlements that
require administrative approval.  See Tex. Lab. Code § 408.005 (d), (e) (requiring the
approval of the director of the division of hearings for all settlements).

Moreover,
workers=
compensation is a strong public policy in Texas
and indeed in all fifty states.  The
Legislature has made clear its preference for a quick and fair system to
compensate injured workers.  The
Legislature=s  prompt amendment of
the Labor Code after Lawrence
pointedly reinforces that legislative intent. 
Permitting companies to induce their employees to sign up for something
other than subscriber-level benefits without a guarantee that the workers
understand the plan they are accepting would substantially undercut the public
policy behind the compensation system. 
Thus, while this plan may not represent the same extraordinary degree of
risk-shifting as an indemnity agreement, the expressed and reiterated public
policy of this state justifies our imposing the fair notice requirements.

In
requiring that nonsubscriber agreements satisfy the
fair notice requirements, we reiterate that this is a limited extension of
those two doctrines because of the unique status of such agreements under our
law.  To the extent that the court of
appeals suggested that the fair notice requirements apply to a contract that
shifts any degree of risk, we disapprove of that court=s opinion.  The fair notice requirements have
traditionally applied to extraordinary risk shifting, Green Int=l,
951 S.W.2d at 387, and we only expand those requirements to admittedly less
than total risk shifting because of workers=
compensation=s unique
public policy posture.

S&P
and Guerrero have conceded that, if the conspicuousness requirement applies,
the waivers Reyes signed did not meet it. 
See Dresser, 853 S.W.2d at 508.  However, a disputed fact question remains
whether Reyes had actual knowledge of the terms of the plan.  S&P produced an affidavit from its
orientation supervisor stating that she is fluent in English and Spanish and
that she reviewed the plan and liability waiver in Spanish with Reyes, after
which he signed a form which recited the plan=s
details.  In response, Reyes averred that
he can neither read nor write English, that he never received an explanation of
the plan in Spanish or English, and that S&P never provided him any
paperwork written in Spanish.  Because
actual knowledge is an affirmative defense that the defendants must prove, Dresser,
853 S.W.2d at 508 n.2 (citing Cate, 790 S.W.2d
at 561), a disputed fact question exists on this issue.

For
these reasons, we affirm the court of appeals=
judgment, remanding this case to the trial court for further proceedings.

 

_____________________________

Thomas R.
Phillips

Chief Justice

 

 

OPINION DELIVERED:         April 2, 2004











[1] For many years, Texas followed the
rule that Aan indemnity agreement will not
protect the indemnitee against the consequences of
his own negligence unless the obligation is expressed in unequivocal terms,@ Joe Adams & Son v. McCann
Const. Co., 475 S.W.2d 721, 723 (Tex. 1971), even though our courts did not
Afollow the refinement of the rule
which requires that the agreement, in order to effectually embrace the
negligence of the indemnitee, should expressly so
state.@ Id. at 724 (quoting Spence & Howe Constr. Co. v. Gulf Oil Corp., 365 S.W.2d 631, 634 (Tex. 1963)); see also Ohio Oil Co. v. Smith, 365 S.W.2d 621, 624 (Tex. 1963); Mitchell=s, Inc. v. Friedman, 303 S.W.2d 775, 779 (Tex. 1957).