Elizabeth ANNAT, Appellant,

v.

Daniel B. BEARD and Warren J. Hamilton, Appellees.

Elizabeth ANNAT, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 17841, 17885.

United States Court of Appeals
Fifth Circuit.

April 26, 1960.

John P. Grier, Wm. J. Pruitt, Miami, Fla., for appellant.

S. Billingsley Hill, Roger P. Marquis, Attys., Dept. of Justice, Perry W. Morton, Asst. Atty. Gen., Dept. of Justice,

Washington, D. C., David C. Clark, Jr., Asst. U. S. Atty., E. Coleman Madsen, U. S. Atty., Miami, Fla., for appellees.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

As a part of the land acquisition program for the Everglades National Park, the United States brought a condemnation suit against a number of owners of land in Dade County, Florida, in May of 1950, and took possession of the land in December of that year. Among the defendants in that cause was Elizabeth Annat, the appellant here. By its petition in condemnation the Government declared its purpose to take and acquire the lands within a described perimeter boundary which was contained in an exhibit incorporated into the petition. The land which is the subject of this controversy was within the perimeter description. By an amendment to its petition the United States stated that the lands within the perimeter boundary had been divided into numbered tracts, and the descriptions of these tracts and the supposed owners of such of them as the Government regarded as being in private ownership, were set forth. Tract 317, as described in the amendment, included part of Section 18, all of Section 19, and all of Sections 26 to 35, Township 59 South, Range 36 East. Tract 337 embraced most of Township 60 South, Range 26 East, and most of the mainland part of Township 61 South, Range 36 East. The amended petition attributed ownership of Tracts 317 and 337 to the Estate of Hugh Annat, the deceased husband of the appellant.[1] The amendment described Tract 268 as "The Hiatus between Townships 59 and 60 South, in Ranges 35 and 36, East." It was alleged that the United States claimed title "to all lands which may be situate in any hiatuses created by reason of any erroneous surveys, projection plats, or other maps prepared for use in connection with any lands within the perimeter

boundary of the Park". Tract 414 was described as "Any part or portion of lands lying on the mainland of Florida within the perimeter boundary of the Park, excepting, however, all those tracts of land hereinabove more particularly described." By her answer Mrs. Annat asserted ownership of and a right to compensation for lands described by reference to sections and parts of sections which were the same, with inconsequential variations, as those used by the Government in describing Tracts 317 and 337. Mrs. Annat's description closed with the clause, "containing 31,860 acres more or less."

The lands here involved and other lands in the condemnation suit were patented by the United States to the State of Florida. The State, acting through its agency the Trustees of the Internal Improvement Fund, granted to the Florida East Coast Railway Company a large area of lands estimated to be 260,000 acres, in which was included all, except Section 16, of Township 59, Range 36, all, except Section 16, of Township 60, Range 36, and all, except Section 16, of Fractional Township 61, Range 36. Little had then been done in the way of surveying although some township lines had been established on the ground by the United States. The Model Land Company prepared and recorded a map, known as the Dooley Map, covering the lands in the grant of the State to the Railway Company. This map was not based on any actual survey. It showed section areas to be 800 acres rather than the conventional 640 acres. It showed the South line of Township 59 as being the North line of Township 60. Shortly before the condemnation suit was filed, the Land Acquisition Office of the National Park Service prepared a map of the area and it was adopted by the Trustees of the Internal Improvement Fund "as an official survey." This map, like the Dooley Map, was not based on actual surveys. It showed section areas to be 640 acres in area with

---

1. The appellant, Elizabeth Annat, succeeded to whatever titles her husband, Hugh Annat, may have had at the time of his death.

the result that there was a hiatus, nearly two and a half miles in width between Township 59 and Township 60, which was given the designation of Township 59½. By the Dooley Map Tracts 317 and 337 were contiguous. By the new map these tracts were separated by the Township 59½ hiatus. The hiatus, so shown, extended through Range 35 as well as Range 36 and was referred to in the condemnation case as Tract 268. The Annat land, as shown on this map, with so much of the Township 59½ hiatus as is here involved, is thus depicted by one of the exhibits brought up to us from the district court:

The condemnation court held an extended pre-trial hearing for the purpose of ascertaining the method by which the location and area of each of the various parcels of land should be determined. Over the objection of counsel for several of the landowners, including counsel for Mrs. Annat, the court entered an order finding that the lands of the defendants could be located from and on the Government's map, referred to as Petitioner's Exhibit 1, so as to meet the requirements of determination of the issue of just compensation. By the order the court adopted Petitioner's Exhibit 1 to the exclusion of any other map showing or purporting to show the tracts of land being acquired by the Government. This order, in so far as it affected Mrs. Annat, reduced the area of the described lands which were being taken from her by approximately twenty percent, and showed the hiatus land. The Government took the position that the hiatus Tract 268 had not been previously conveyed by the State of Florida and was not within the description of the land acquired by Mrs. Annat. The Government claimed ownership of Tract 268 and other hiatus parcels under a blanket deed from the State of Florida covering the entire park area. On May 16, 1952, a verdict was returned for Mrs. Annat in the amount of $130,977, and at the same time verdicts for other landowners in varying amounts were brought in. On May 26, 1952, a judgment, which was captioned "Final Judgment" was entered. By it the jury awards were confirmed, it was declared that title to the lands described, including Tracts 317 and 337, had vested in the United States, and judgments were awarded to the named landowners, including Mrs. Annat, for the amount by which the awards exceeded the initial deposits. This judgment provided that the cause should be held open for such further orders as might be necessary "to determine ownership of the several Tracts involved herein and to distribute the awards herein made." After this judgment was entered some of the defendants moved for

a new trial on the ground that the adoption of Petitioner's Exhibit 1 as showing the location and area of the sections and townships was erroneous. On denial of the motion several of the defendants appealed. Their notice of appeal was filed on November 7, 1952. No appeal was taken by Mrs. Annat. This Court reversed the district court and held that the Dooley Map, with its 800-acre sections and without any hiatuses, should have been adopted by the court as the guide to determination of the location and area of the land taken in condemnation. Paradise Prairie Land Co. v. United States, 5 Cir., 1954, 212 F.2d 170.

While the appeal of Paradise Prairie Land Co. was pending, a jury in the district court returned verdicts for several tracts not covered by the prior verdict and judgment. This verdict, returned on January 26, 1953, recited that Tract 414, consisting of the lands not otherwise particularly described, had a value of $1.00. On February 3, 1953, the court entered a judgment called "Final Judgment as to Tracts 379, 381, 385, 387, 388, 389 and 414." Judgment on this verdict was entered on February 3, 1953, finding a value of $1.00 as just compensation for Tract 414 and directing that upon the payment of that sum into the registry of the court title should vest in the United States. No intimation was given in the judgment as to how or by whom the $1.00 might be claimed. On April 13, 1953, the third final judgment was entered. It recited findings by the court that certain enumerated tracts, including Tracts 317, 337 and 414 had been acquired through condemnation and just compensation had been paid to the owners. There was a finding that Tract 268 had been conveyed to the United States by the Trustees of the Internal Improvement Fund of the State of Florida. After these and other findings, it was adjudged, among other things, that the United States was the owner of the land as being within the perimeter incorporated in the judgment.

In 1957 Mrs. Annat commenced, in the Florida Circuit Court, an action of eject-

ment for the recovery from Daniel B. Beard of Tract 268, or the Township 59½ hiatus lying in Range 36, claiming ownership and asserting that Beard was in wrongful possession. Beard, disclaiming any interest in his own right and identifying himself as Superintendent of the Everglades National Park, removed the cause to the United States District Court. The United States championed the cause of Beard, asserted that it was a necessary party and that, in legal effect, the suit was one against the United States without its consent and hence there was no jurisdiction. Both parties moved for summary judgment. On behalf of Beard it was contended that the condemnation proceedings included the hiatus land and that it acquired whatever interest Mrs. Annat had, that Mrs. Annat is bound by the condemnation judgment and that judgment is res judicata. Mrs. Annat urged that the United States claimed ownership of the hiatus land by deed from the State of Florida and did not acquire it or seek to acquire it in the condemnation decree and paid no compensation for it, that if the judgment in the condemnation case could be regarded as affecting her title to the hiatus it was, in that respect, void, and finally, that the United States was not a necessary party.

While Mrs. Annat's suit against Beard was pending she filed a motion in the condemnation proceeding under Rule 60 (b)[2] seeking to be relieved of the judgment. The court denied the Rule 60(b) motion in the condemnation case and entered a summary judgment in the ejectment action in favor of the defendant Beard and his successor and co-defendant, Warren J. Hamilton, who had been added as a party. An appeal was taken from each of the judgments.

■ The land involved in the Paradise Prairie Land Co. case was the Township 59½ hiatus in Section 36. If Mrs. Annat had appealed it may be assumed that she would have obtained the same successful result as did the appealing defendants. There is nothing to indicate that there would have been a different result as to her. But Mrs. Annat did not appeal. Although the so-called hiatus land of Paradise Prairie Land Co. adjoined the hiatus land of Mrs. Annat, there was no joint ownership between them, no award had been made to them jointly, and their only joint interest was in the proposition of law which Paradise Prairie had resolved for its benefit and Mrs. Annat did not. A reversal on appeal does not inure to the benefit of those who did not join in the appeal unless the interests of the non-appealing parties are so interwoven and dependent as to be inseparable. 5B C.J.S. Appeal and Error § 1952, p. 516; Muskogee National Telephone Co. v. Hall, 8 Cir., 1902, 118 F. 382. Cf. 30 C.J.S. Eminent Domain § 368, p. 64. This principle seems particularly applicable in a condemnation case where a number of separate tracts with different ownerships are taken. While the proceeding, in such a case, is but one suit,[3] it is a suit which joins separate and distinct causes of action.[4] The judgment upon the verdict by which the award to Mrs. Annat was made is res judicata as to Mrs. Annat and all that was held and decided by that judgment is binding upon her.

■ Mrs. Annat's counsel in the condemnation case participated in the pretrial hearing which culminated in the

---

**2.** "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

* * *." Rule 60(b) (4), (5), Fed.Rules Civ.Proc., 28 U.S.C.A.

**3.** Atlantic Coast Line Railroad Co. v. United States, 5 Cir., 1943, 132 F.2d 959. Cf. Rule 71A, Fed.Rules Civ.Proc., 28 U.S.C.A.; 7 Moore's Federal Practice, 2d ed. 2769, par. 71A. 30.

**4.** United States v. Runner, 10 Cir., 1949, 174 F.2d 651.

adoption of Petitioner's Exhibit 1 as the map which fixed the location, dimensions and area of the land for which she was to receive compensation. During the trial before the jury for the fixing of compensation an effort was again made on Mrs. Annat's behalf to show that the land for which she was entitled to compensation should include the Range 36 portion of the Township 59½ hiatus. For reasons not here disclosed, but no doubt regarded by Mrs. Annat as sufficient, she chose not to appeal. The result and effect of the judgment by which Mrs. Annat is bound was, that the land owned by her comprised the described sections and parts of sections of 640 acres each as shown on Petitioner's Exhibit 1, and that she did not have any ownership of the Township 59½ hiatus as shown on Petitioner's Exhibit 1. Unfortunate as it may appear in this particular case, the principle of res judicata requires us to hold that the situation of Mrs. Annat is not bettered by the Paradise Prairie Land Co. reversal. That principle of res judicata is applicable in condemnation cases. See Bullen v. De Bretteville, 9 Cir., 1956, 239 F.2d 824, certiorari denied Treasure Co. v. Bullen, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856.

■ Relief under Rule 60(b) was properly denied. The judgment, in so far as it affected Mrs. Annat's rights, was not a void judgment, nor is there any other valid reason justifying relief upon the judgment. Mrs. Annat's counsel, as we have already observed, were fully cognizant of the legal question involved in the adoption by the court of Petitioner's Exhibit 1. The ruling of the court in adopting that map as fixing locations, boundaries and areas become the law of the case and, since Mrs. Annat did not appeal, it remained the law of the case so far as she is concerned, even though as was determined in the Paradise Prairie Land Co. case, the judgment was erroneous. However, it is not void and not subject to being vacated under Rule 60(b)(4). The fact that the judgment was erroneous does not constitute "any other reason justifying

relief." The remedy was by appeal. Elgin National Watch Co. v. Barrett, 5 Cir., 1954, 213 F.2d 776. A case in point is Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207. There Ackermann and his wife, and his cousin Max Keilbar, had been defendants in a denaturalization proceeding and judgments were entered cancelling their citizenship. From this judgment Keilbar appealed and, on stipulation of the United States, there was a reversal and the complaint as to Keilbar was dismissed. The Ackermanns did not appeal. Thereafter the Ackermanns sought to vacate the judgment under Rule 60(b). The district court denied relief and this Court affirmed. Ackermann v. United States, 5 Cir., 178 F.2d 983; 179 F.2d 236. The Supreme Court, in affirming, said,

"Petitioner made a considered choice not to appeal * * *. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, considering the outcome of the Keilbar case [Keilbar v. United States, 5 Cir., 144 F.2d 866]. There must be an end to litigation some day, and free, calculated and deliberate choices are not to be relieved from." 340 U.S. 193, 198, 71 S.Ct. 209, 211, 95 L.Ed. 207. See Collins v. City of Wichita, 10 Cir., 1958, 254 F.2d 837.

The motion for Rule 60(b) relief was properly denied.

■ The views which we have of these matters make it unnecessary to discuss the three "Final Judgments" in the condemnation suit. The judgment of May 26, 1952, which was the judgment reversed in Paradise Prairie Land Co. v. United States, supra, and the judgment of April 13, 1953, are both asserted and relied upon by the Government in the ejectment suit against Beard. It is from the judgment of April 13, 1953, that Mrs. Annat seeks relief by her Rule 60(b)

motion. The judgment of May 26, 1952, adjudicated the location, boundaries and area of the Annat land and fixed the amount of the just compensation to be paid for it. Thus the requirements of finality and appealability are met. Catlin v. United States, 324 U.S. 229, 65 S. Ct. 631, 89 L.Ed. 911. Cf. United States v. Richardson, 5 Cir., 1953, 204 F.2d 552. The judgment of April 13, 1953, merely confirmed the earlier judgment as to the matters there determined. Although the United States asserts that the 1953 judgment has quieted its title to all of the lands within the perimeter, we find no need to consider this contention.

The judgment of the district court in each of the cases is

Affirmed.