**MONSANTO COMPANY, Appellant,**

v.

**Victor U. MILAM, Appellee.**

No. 562.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 19, 1972.

Rehearing Denied May 10, 1972.

Tom Alexander, Robert .C. Floyd, Butler, Binion, Rice Cook & Knapp, Houston, for appellant.

Michael Moriarty, David H. Burrow, Helm, Jones & Pletcher, Houston, for appellee.

TUNKS, Chief Justice.

Victor Milam, appellee, brought this suit against Monsanto Company and an employee of Monsanto Company, Herbert Hutson, for burn injuries sustained at Monsanto's Chocolate Bayou Plant. Judgment based upon the answers to special issues was rendered for plaintiff Milam against defendant Monsanto, but not against defendant Hutson, in the amount of $83,750.00. Monsanto has appealed. There was no appeal of the judgment in favor of Hutson. In this opinion Monsanto will sometimes be called the defendant.

In March of 1966, various contractors, including Milam's employer, A. A. Pruitt, were hired to perform a routine scheduled maintenance program at Monsanto's plant. A. A. Pruitt was specifically contracted to remove and reinstall valves and equipment from the various departments for repair maintenance by other contractors.

Department 19, which is the part of the plant where the fire occurred and plaintiff was injured, is the area for converting hydrocarbon crude products into a by-product, propylene, which is a heavy gas vapor. Although this department is a sealed system and during the maintenance was decontaminated and depressurized, it still would contain a sufficient mixture of gas which would ignite if a flame were introduced into the pipes.

On March 14, 1966, the day before the fire, this system was pressured up whereupon three check valves were found to be defective. Pruitt's crew, which included Milam, removed these valves for repair. Shortly before the fire on March 15, a Monsanto employee noticed that one of the valves which was called the 19–P.I.C.–5 valve appeared to have been installed improperly. After discussing this problem with Hutson, the Monsanto employees received permission from their supervisor, Vonnie Moore, to check the action of that valve by "stroking" it. This permission was given at approximately 6:00 p. m. "Stroking" a valve means turning the valve's action—in this case from closed to open and back to closed.

At approximately 7:00 p. m. on that date, Pruitt requested of Vonnie Moore a work or fire permit to install the check valves removed the day before. Those were in the area where the 19–P.I.C.–5 valves were being or had been stroked. (This is a major point of dispute.) Moore issued the permit, Pruitt's crew including Milam took their "cherry picker" crane, which had a gasoline engine, and impact wrenches into the area. While installing a second check valve, a fire erupted and spread out over the area resulting in second degree burns over approximately 15% of Milam's body.

The portion of the plaintiff's petition alleging the basis of the defendants' liability is in the following language:

"At the time of the occurrence of March 15, 1966, at or about the hour of 7:30 o'clock p. m., out of which this suit arises, your plaintiff was working in the course and scope of his employment for A. A. Pruitt Contractor, at Monsanto's Chocolate Bayou Plant, located approximately twelve miles south of Alvin, in Brazoria County, Texas. Defendant, Herbert Hutson, acting in the course and

scope of his employment for the defendant, Monsanto Company, carelessly and negligently permitted highly volitale gases to escape into the area where plaintiff and his fellow employees were working, thereby causing an explosion and fire inflicting serious and painful injuries and burns to various parts of plaintiff's body. The incident made the basis of this suit was proximately caused by the negligence of the defendants."

The defendants did not except to that pleading.

The first ten special issues that were submitted by the court to the jury inquired as to whether "the defendant, Monsanto Company," was negligent in (1) the untimely issuance of a permit to work in the area where the fire occurred; (2) the untimely testing of the 19–P.I.C.–5 valve; (3) the failure to stop the work being done by the crew of which the plaintiff was a member; and (4) the failure to warn plaintiff of the testing of the 19–P.I.C.–5 valve. Proximate cause issues were included. Those issues were all answered in the affirmative.

Special issue number 11, submitted to the jury was:

"Do you find from a preponderance of the evidence that at the time of and on the occasion in question the defendant, Herbert Hudson, permitted gas to escape into the area where plaintiff was working?"

That issue was answered in the negative. Special issues 12 and 13 were negligence and proximate causes conditionally submitted and not answered.

Special issues 14 and 15 were contributory negligence and proximate cause issues as to Milam's failure to keep a proper lookout. Number 14 was answered in the negative and 15, conditionally submitted, was not answered. Special issue 16 was a sole proximate cause issue and 17 was unavoidable accident, both answered in the negative.

The defendants objected to each of the first ten issues on the basis, among others, that there was no pleading by plaintiff to support its submission. The plaintiff did not file, nor request permission to file, a trial amendment. Those objections were overruled by the trial court. The appellant's first point of error is based upon the trial court's submission of such issues over such objection.

■ In the trial court the defendants objected to special issue number 11, quoted above on the ground that it was a general issue in that it did not inquire about any specific act or omission of Hutson in permitting the gas to escape. That objection was overruled. Thus, in the trial court the plaintiff in requesting the issue took the position that it was not general but was specific. It was in substantially the language of plaintiff's pleading, but that fact would not excuse its submission over objection if it was a general issue. Kainer v. Walker, 377 S.W.2d 613 (Tex.Sup.1964). If special issue number 11 was specific then plaintiff's pleading that Hutson negligently permitted the gas to escape was a specific allegation of negligence on the part of Hutson and on the part of Monsanto through its employee, Hutson. If such was the case, then the general allegation that the incident was caused "by the negligence of the Defendants" was controlled by that specific allegation and such pleading would not support the submission of issues as to other acts or omissions of the defendants than that of Hutson in permitting gas to escape. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953); Knight v. Caloudas, 409 S.W.2d 904 (Tex.Civ.App.—Houston 1966, no writ). The matters inquired about in the first ten issues are not confined to Hutson's permitting the gas to escape.

The determination as to whether a pleading or an issue is "specific" or "general" in a personal injury negligence case is often difficult. See Pope, Broad and Narrow Issues, 26 Tex.B.J. 921 (1963).

However, in this case it is not necessary to determine whether the plaintiff's quoted pleading was so general as to be subject to exception or whether special issue 11 was subject to the objection that it was general. The jury answered that issue in the negative. Judgment was rendered in Hutson's favor and no appeal was taken from such judgment. Whether the trial court erred in overruling the objections to the issue is immaterial. It is the appellee's position in this Court that his pleading that Hutson was negligent in permitting gas to escape was general in nature, that it did not control or limit the scope of the allegation the accident was caused by the negligence of the defendants so that the submission of special issues 1 through 10 was supported by the pleading. We do not agree with that position.

In Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238 (Tex.Sup.1942) at page 245 the Court said, "A plaintiff can recover, if at all, only on the cause of action pleaded by him. The office of a pleading is to define the issues to be tried." In Simmons v. Terrell Electric Light Co., 12 S.W.2d 1011 (Tex.Comm'n App.1929, holding approved) at page 1014 the Court referred to specific pleadings as the device by which the pleader shall "choose and mark off the field of battle, . . .." In Cruz v. Ansul Chemical Company, 399 S.W.2d 944 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.) at page 949 the Court said, "The purpose of a pleading is to inform the court and the adverse party of what the pleader's contentions will be on the trial of the case, . . .."

In Lewis v. Hatton, 86 Tex. 533, 26 S.W. 50 (1894) the plaintiff alleged that the defendants had wrongfully entered his premises and taken his property. A nonsuit was taken as to one defendant and as to the other, a sheriff, the evidence showed that not the defendant, but his deputy, had entered and taken the property. The Court held that this proof did not establish the cause of action pleaded against the sheriff. The Court said at pages 50–51,

"The rule that a plaintiff must state the essential facts which constitute his cause of action is elementary, and this the statute emphasizes by requiring him to make 'a full and clear statement of the cause of action.' This is necessary to inform a defendant of what he is called upon to answer, and to enable him to prepare his defense. The petition informed defendants that plaintiff based his action on their personal acts, and gave no intimation whatever of intention to hold either of them responsible for acts done by another person, for whose conduct they or either of them were responsible."

In Gunnells Sand Company v. Wilhite, 389 S.W.2d 596 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.) the Court, after citing and quoting from Lewis v. Hatton, supra, said, at page 598:

"Although the enumerated Rules have simplified and liberalized Texas pleading, this essential has not been abandoned. A pleading that an act was committed by a party will not support admission over objection of evidence it was done by another for whose conduct the party is charged to be responsible; . . . .".

■ Those authorities support the proposition that the plaintiff's pleading imposed some limitations on the "field of battle" in this case. It was limited, first to acts and omissions of Monsanto through the medium of its employee, Hutson, and second to those acts and omissions of Hutson that were incident to permitting gas to escape. That does not mean, however, that there was no allegation that Monsanto was negligent in causing the fire and the injuries to Milam. In keeping with the principle of respondeat superior, the allegation that Hutson, in the scope and course of his employment by Monsanto, was negligent was an allegation that Monsanto was negligent. Monsanto is a corporation and all of its acts and omissions are through the medium of some employee or other agent. The

first ten issues inquired if "the defendant, Monsanto" was negligent in certain respects and if such negligence caused the fire. The objection to them which is the subject matter of appellant's first point of error was that "There are no pleadings to warrant the submission of said issue . . .". As to at least some of those particulars so inquired about, within the literal meaning of the language used in the issue, Monsanto was a participant if Hutson, acting in the scope of his employment, was a participant. The fault in those issues was not in that there was no pleading that Monsanto was negligent in the particulars inquired about, but in the fact that the issues did not confine their inquiries to Monsanto's negligence through the agency of its employee, Hutson, as plaintiff's pleading so limited his "field of battle." That was not the basis upon which Monsanto objected. The objections that "there was no pleading to warrant the submission" of the issues did not distinctly point out to the trial court their defect as required by Texas Rules of Civil Procedure 274. The trial court did not err in overruling such objections. Strachan Shipping Co. v. Petty Geophysical Eng. Co., 369 S.W.2d 526 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.).

During the course of the treatment for his injuries the plaintiff was examined by an ophthalmologist, Dr. Lieven J. Van Riet. That doctor made a written report to plaintiff's attorneys. The report included this language,

"Conclusion: This patient has a marked conjunctival hypervascularization. This condition cannot be due to a burn, but can be aggravated with burning.

Vision is 20/20 in both eyes for near and distance with corrective lenses."

Dr. Van Riet was not called as a witness. The defendants' attorney, Mr. Alexander, questioned the plaintiff as follows:

"Q Did he (Dr. Van Riet) or did he not report to you that the vision was 20/20 in both eyes?

A Yes, sir.

Q For near and distance with your corrective lenses?

A That is right."

The record shows that in asking those and other questions the defendants' lawyer "was questioning the Plaintiff from" Dr. Van Riet's report. Immediately following those questions and answers the Statement of Facts shows:

"REDIRECT EXAMINATION

*Questions by Mr. Burrow:* (plaintiff's attorney)

Q In connection with that last question, would you state whether or not Dr. Van Riet reported to you that you had—

MR. ALEXANDER: Just a minute —

MR. BURROW: Let me ask the question.

MR. ALEXANDER: He is undertaking to read from a report from a doctor he has not seen fit to bring, and it is not proper.

THE COURT: Overruled.

Q Did Dr. Van Riet, the ophthalmologist in Houston, report to you that you had marked conjunctival hypervascularization, and this condition cannot be due to a burn but can be aggravated by burns?

A Yes. The blood vessels in my eyes, I guess you call it. He prescribed another pair of glasses."

The record shows that the plaintiff's attorney, too, held the report in his hands as he thus questioned the plaintiff.

After that testimony the plaintiff rested. The court excused the jury for 15 minutes. Then, in the absence of the jury, the defendants' attorney dictated to the court reporter a motion for instructed ver-

dict. It was overruled. Then, apparently for the purpose of making a bill of exceptions, though such is not shown by the statement of facts, defendants' attorney asked plaintiff's attorney to stipulate that he displayed Dr. Van Riet's report to the jury as he was questioning the plaintiff. Plaintiff's attorney would not do so. Defendants' attorney then asked that plaintiff's attorney be sworn and questioned him. By the answers to such questions it was shown that plaintiff's attorney had the report in his hand as he questioned the plaintiff. Thereupon defendants' attorney moved for a mistrial. It was not until that point of the trial that the defendant stated any objection to the substance of the testimony elicited by the plaintiff's attorney's questioning the plaintiff while holding the report in his hand. In such motion, for the first time, defendants objected to the testimony so elicited on the ground that it was hearsay.

Appellant's second point of error is, "The Trial Court erred in permitting Plaintiff to testify that his treating eye doctor told him that he had conjunctival hypervascularization of the eyes due to the burns."

■■ The holding and use of a written instrument in questioning a witness is not, per se, objectionable. Such an instrument, for example, may be so authenticated under the provisions of Tex.Rev.Civ.Stat. Ann. art. 3737e that it may not only properly be used and referred to in examining a witness, but also be admissible in evidence, itself. It is true, as pointed out by defendant in its motion for mistrial, such an authenticated instrument may contain inadmissible matter. Loper v. Andrews, 404 S.W.2d 300 (Tex.Sup.1966). But the objection of defendants' attorney, if it can be called an objection at all, rather than a comment, did not specify that the report being used either was unauthenticated or included inadmissible matter. At best, the objection was a general objection without stating any grounds. The court did not

err in overruling it. Mueller v. Central Power & Light Company, 403 S.W.2d 901 (Tex.Civ.App.-Corpus Christi 1966, no writ); 1 McCormick & Ray, Texas Evidence sec. 25 (2d ed. 1956); 52 Tex.Jur.2d Trial sec. 162 (1964).

■■ After the defendants' motion for instructed verdict and for mistrial had been overruled the defendants then moved that the court strike the plaintiff's testimony as to the contents of the medical report and to instruct the jury not to consider it. That motion, too, was overruled. Such ruling was not reversible error. The motion should have been made at the time the testimony was given. 1 McCormick & Ray, Texas Evidence sec. 23 (2d ed. 1956).

Appellant's second point of error is overruled.

The third and fourth points of error relate to the jury arguments of plaintiff's attorney. The third point relates to informing the jury of the effects of their answers to the issues. The fourth point is that the cumulative effect of the argument was prejudicial.

■ The only part of plaintiff's opening argument complained of in appellant's brief is reflected by the following excerpt from the transcript:

> MR. BURROW: Ladies and Gentlemen, the special issues, I want you to give careful attention to these because this whole Charge is important, there is not one issue in here that is not important. I am sure that Mr. Alexander would be most happy if he could get you to answer one of the issues against the evidence, and he would feel he has done his job, any one of the nineteen issues.

> MR. THOMAS: This is clearly attempting to tell the Jury the effect of their answers to these issues.

> THE COURT: All right."

That argument, of itself, was not improper. The rest of the argument complained of

was in the closing argument. The complained of argument was:

"Why is it to paint me as some type of an unscrupulous, dishonest lawyer that will try a case by innuendo in hopes that you can pour this man completely out of the Courthouse and give him not one copper/penny. And, Ladies and Gentlemen, if you believe I brought you that kind of case, then you just do that very thing, you write zero down in the damage issue, and answer one of the issues 14, 15, 16, 17 against him otherwise, . . .".

MR. ALEXANDER: "Pardon me. Mr. Burrow is wrongfully trying to get the Jury not to follow the Court's instructions to them which tells them not to consider the effect of their answers, and I ask that he be instructed not to do this and the Jury be instructed not to consider the last remark."

THE COURT: "Overrule the objection."

And, at a later point:

MR. BURROW: "I am not going to try the case any further by making any innuendo arguments, I don't want you to consider the case on innuendoes. If you want to see what innuendoes will do, then just refer to Hitler's or Mussolini's writings."

MR. ALEXANDER: "I don't know who that is he is equating to, me or Wiley."

MR. BURROW: "I withdraw that, Your Honor. Now, folks, I couldn't mean this more, and this is all I have to say. I have had this case for a long time, and if you feel that, due to the original information, the information I had originally, that if I erroneously sued Mr. Hutson, then you get him out of this case by answering those issues that you don't find Mr. Hutson guilty of negligence, just go ahead and do that. But, by the same token, do not sell this man's case down the river, which he justly has against Monsanto. This is his one and only day in Court, if you folks don't give him enough money he can't come back and he can't go anywhere else, this is his only place, and his future, what he has to suffer when he works out there for his family hour after hour for many days, many years in the future around these chemicals and goes through these burns, his future in that regard is in your hands, and I place it on your shoulders. You can pour him out, write $5,-000, $10,000 down there, write zero, you can do that if you want to, if you want to do it you can, but if you want to do the right thing and follow your oath as jurors and do the right thing in due justice under the evidence for Mr. Milam, then you will answer the issues the way the evidence says, 1 through 10 "We do", 14, 15, 16 and 17, tie the knot on those, and award in Special Issue No. 19 a substantial sum of money that you feel is adequately justified by the evidence, and I'm not telling you you have to award $5,000 or $10,000, and I would rather you would award zero. The way I feel about it, if you do it according to the evidence, then you are not going to get up in the morning and the ladies put on your makeup and you men look in the mirror and shave and look at Mr. Millam's face and know you gave him an unfair trial. Thank you."

In such argument the attorney did tell the jury the effect of their answers and, in conflict with the court's instruction, asked them to consider such effect. But by the time of plaintiff's closing argument there can be no doubt that the jury had been fully informed by defendants' counsel of the effect of their answers to the issues. Most of plaintiff's opening argument was spent in contending that under the evidence the first ten issues, the primary negligence issues as to Monsanto, should be answered in the affirmative and that special issues 14 through 17, the defensive issues, should be answered in the negative. With refer-

ence to special issues 11, 12 and 13, the primary negligence issues as to Hutson's conduct, the plaintiff, in his opening argument, conceded that the evidence would permit a negative finding. Mr. Thomas, one of the attorneys for Monsanto, in his argument, characterized such argument of plaintiff's attorney as follows:

". . . he stood up here and gave up in a sickly and weakly way by telling you in so many words—he knows you are not dummies, and I do, too—"Answer the issue against us on Herbert Hutson, but give us our money from Monsanto."

Defendants' counsel referred to plaintiff's attorney as "Mr. Pitch Man," and, by inference, as a "smooth confidence man". Under the circumstances the arguments made by plaintiff's attorney in the closing argument do not require a reversal. The argument, although telling the jury (erroneously) the effect of their answers to issues 14, 15, 16 and 17, does not require reversal because counsel for defendants had already told such effect. Cooper v. Argonaut Insurance Co., 430 S.W.2d 35 (Tex.Civ.App.-Dallas 1968, writ ref'd n. r. e.); Rapid Transit Lines, Inc. v. Doyle, 450 S.W.2d 767 (Tex.Civ.App.-Houston (14th Dist.) 1970, no writ); Green v. Hudson Engineering Corporation, 305 S. W.2d 201 (Tex.Civ.App.-Fort Worth 1957, writ ref'd n. r. e.); Arando v. Higgins, 220 S.W.2d 291 (Tex.Civ.App.-El Paso 1949, writ ref'd n. r. e.).

Plaintiff's petition prayed for recovery of damages in the amount of $83,750.00. In response to special issue 18 the jury found past medical expense in the amount of $506.00. Special issue 19, the principal damage issue, included the elements of past and future physical and mental pain and suffering and loss of earnings in the past. The jury answered that issue by stating the amount $83,500.00. The two findings exceeded the amount prayed for, but judgment was rendered for $83,750.00, the amount of such prayer.

Appellant's 5th point of error is to the effect that the jury's findings of damage are so against the greater weight and preponderance of the evidence as to be manifestly wrong and unjust. The 6th point seeks remittitur.

First it should be noted that counsel for Monsanto specifically requested the jury to include in its finding as to damages attorney's fees to be paid plaintiff's attorney, an element neither proved by evidence nor properly included under the court's charge. Under the circumstances it is hardly fitting that Monsanto challenge the damage findings as being excessive.

Dr. Kenneth Chambler, an M.D. experienced and specializing in the treatment of burns, examined and treated the plaintiff. He first saw plaintiff in the emergency room of Alvin Memorial Hospital in Alvin, Texas, on the day of the accident, March 15, 1966. Plaintiff remained in that hospital and under Dr. Chambler's care for six days and then was moved to Waller County Hospital, in which he stayed for another 10 days.

Dr. Chambler described plaintiff's injury as first and second degree burns of the hands and face and inhalation burns of the lungs. He described them as very painful. He said, "superficial burns are much more painful than deep burns because the nerves are still intact". He said that he had seen the plaintiff a few months before the trial and that plaintiff had complained of stinging and irritation of the face and wrists. This was explained by the fact that the burns had killed several layers of skin leaving a sensitivity to irritations and infections. The doctor said that such condition was permanent, that "once the skin has been destroyed there is nothing curative."

The plaintiff was 43 years old at the time of the fire and 48 at the time of the trial. He testified that his hands and face still sting and burn painfully when he is exposed to either heat or cold. His work, as a pipe fitter, requires him to work un-

der such conditions. He has difficulty using his hands and when they are exposed to heat, blisters rise on them. He has given up recreational activities such as horseback riding and fishing.

The plaintiff returned to work six weeks after his injury. His loss of wages could not have been more than three or four thousand dollars. He suffered no disfigurement. His annual earnings have increased and in 1970 were $22,000.00. His employer testified that he has made no complaints since returning to work. The $506.00 item found by the jury was his doctor and hospital bill while at Alvin Memorial Hospital. There was no proof of his other medical expense. Thus, if the jury's damage finding in answer to issue 19 was not excessive, it must be because the evidence justified a finding of about $80,000.00 as reasonable compensation for past and future physical and mental pain and suffering.

■ In determining whether a verdict is so excessive as to require a reversal of a judgment based upon it, the appellate court must view the evidence in the light most favorable to the verdict. Green v. Rudsenske, 320 S.W.2d 228 (Tex.Civ.App.-San Antonio 1959, no writ). Such a reversal will be ordered only if the record indicates that the excessive verdict was the result of passion, prejudice, or other improper motive on the part of the jury, or it is so excessive as to shock the sense of justice of the appellate court. Bluebonnet Express, Inc. v. Foreman, 431 S.W.2d 45 (Tex.Civ. App.-Houston (14th Dist.) 1968, no writ); World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962 (1937); Green v. Rudsenske, supra. In applying those rules an appellate court must consider factors that are intangible and not subject to precise measurement. Particularly is that true in this case where the verdict necessarily must largely be based on pain and suffering. It is an area of the appeal in which the jury's findings should be given special weight. Missouri Pacific Railroad Co. v. Miller, 426

S.W.2d 569 (Tex.Civ.App.-San Antonio 1968, no writ).

The evidence includes pictures taken a few days after the fire and showing plaintiff's face and hands. The injuries were severe. The doctor said that his pain for the first few days was "excruciating". He obviously, suffered a lesser degree of pain thereafter. The record sustains a conclusion that he will suffer some pain for the rest of his life. Under those circumstances the record does not require a reversal because of excessiveness of the finding of damages.

■ As distinguished from a reversal of the judgment, a remittitur may be ordered as a condition of affirmance without there being evidence of improper motive on the part of the jury. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959). In passing on the question of remittitur sought in this Court we are required to exercise ". . . sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess. The court must first determine what amount would be reasonable, before it can determine what amount would be unreasonable." Wilson v. Freeman, 108 Tex. 121, 185 S. W. 993, 994 (Tex.Sup.1916); Flanigan v. Carswell, supra. Having considered this record in the light of such requirement we have concluded that we should not order any remittitur as a condition of affirmance.

Appellant's fifth and sixth points of error are overruled.

Appellant's seventh point of error is,

"THE TRIAL COURT ERRED IN RENDERING JUDGMENT FOR PLAINTIFF ON THE FINDINGS OF THE JURY IN ANSWER TO SPECIAL ISSUES 1 THROUGH 10 BECAUSE THEY WERE NOT ULTIMATE ISSUES OF FACT BUT ONLY EVIDENTIARY ISSUES."

■ It is to be noted that such point does not contend that the trial court erred in overruling objections to the charge, but rather that it erred in "rendering judgment". In its argument it contends that the primary negligence issues were defective because they failed to specify the exact time of the negligence inquired about. As to the proximate cause issues the appellant argues that they were "clearly improper" because they inquired about the "occurrence" made the basis of plaintiff's suit. The defendant did not object to the issues on those grounds. If the issues were defective or improper for such reasons, such defects were waived. Tex.R.Civ.P. 274.

Appellant's eighth and final point of error is,

"THE TRIAL COURT ERRED IN RENDERING JUDGMENT FOR PLAINTIFF ON THE FINDINGS OF THE JURY IN ANSWER TO SPECIAL ISSUES 1 THROUGH 10 BECAUSE THERE WAS NO EVIDENCE THE FINDINGS WERE A PROXIMATE CAUSE OF THE FIRE."

The first and second special issues were:

### "SPECIAL ISSUE NO. 1

Do you find from a preponderance of the evidence that at the time of and on the occasion in question the defendant, Monsanto Company, issued a fire permit to the A. A. Pruitt employees, authorizing work with a cherry picker crane, at a time when an ordinary prudent person, in the exercise of ordinary care, under the same or similar circumstances, would not have issued the same?

Answer "We do" or "We do not."

ANSWER: We Do

If you have answered Special Issue No. 1 "We do", and only in that event, then answer:

### SPECIAL ISSUE NO. 2

Do you find from a perponderance of the evidence that such action, if any you have found, was a proximate cause of the occurrence made the basis of this suit?

Answer "We do" or "We do not".

ANSWER: We Do".

Appellant's argument under its 8th point as to those issues is, "There is no evidence the issuance of the 'fire permit' could have been a proximate cause of the fire. The issuance or non-issuance of the 'fire permit' could not, as a matter of law, constitute a proximate cause of the fire." Arguments as to the other primary negligence issues follow that same general line.

■ Appellant's argument is unsound. The evidence shows that the permit was issued shortly before the fire. But for the issuance of the permit the plaintiff would not have been in the area where and when the fire occurred. The untimely issuance of the permit was one of the events in the chain of events which caused plaintiff to sustain his injuries. The correct ultimate inquiry as to causation in a personal injury case is the question as to the cause of the injury itself, not the cause of the accident. It is the injury, and not the accident, that is an element of the plaintiff's cause of action. Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958). It is presumed that the trial court intended that the issues submitted should inquire as to the factual elements of plaintiff's pleaded cause of action. The jury's answer to special issue No. 2 is susceptible of construction that it is a finding that the untimely issuance of the permit proximately caused the plaintiff's injuries. If the word "occurrence" was ambiguous it could have been changed to comply with the defend-

ants' objection pointing out such defect, if any such objection had been made.

Appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.