C. J. OLIVER et al., Plaintiffs,

v.

MONSANTO COMPANY, Defendant and
Third-Party Plaintiff,

v.

A. A. PRUITT, Third-Party Defendant.

Civ. A. No. 67-G-45.

United States District Court,
S. D. Texas,
Galveston Division.

Sept. 19, 1972.

David H. Burrow, Houston, Tex., for plaintiffs.

Walter E. Workman, of Baker & Botts, Houston, Tex., for defendant and third-party plaintiff.

Thomas P. Alexander, and Robert C. Floyd, of Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for third-party defendant.

## AMENDED MEMORANDUM AND ORDER

NOEL, District Judge.

One last issue remains for this Court's determination before this lengthy and multi-party case embarks on its voyage to the docket of the United States Court of Appeals for the Fifth Circuit. Based on new and controlling case law, A. A. Pruitt, third-party defendant, has urged reconsideration of this Court's prior ruling on the indemnity question.

When a chemical flash fire erupted in the Monsanto plant on March 15, 1967, five employees of Pruitt were among the eight persons injured. The Pruitt employees were doing maintenance work for Monsanto pursuant to a contract between the two firms. Claims filed by some of the Pruitt employees in state court were removed by defendant, Monsanto, which then filed a Third-Party Complaint against Pruitt. The complaint alleged a contractual obligation on the part of Pruitt to defend the claims and satisfy any judgments against Monsanto.

The third-party indemnity claim was severed from the negligence claims. There being no dispute about the facts, the parties submitted an Agreed Statement of the Case. Each party presented motions for summary judgment and supporting briefs directed to interpretation of the contract. By docket entry made January 31, 1969, the Court rendered its decision on the third-party claim. The Court held that "all of the injuries and claims made the subject of this thirt-party action were ones 'arising out of the performance of the Work' within the

meaning of the indemnity clause of the Monsanto-Pruitt contract." With respect to Pruitt's employees, this was the only finding necessary. Under the contract, if the actions arose out of the work, Pruitt was obligated to defend the claims of its injured employees and pay any award. The Court declined to decide the indemnity issue as to the non-Pruitt employees at that time. Those cases have since been settled.

Pruitt subsequently assumed Monsanto's defense of the negligence claims. All plaintiffs settled with defendant Monsanto (represented by Pruitt's counsel) except Pruitt employees C. J. Oliver and James B. Evans, Jr. Their claims went to trial, which resulted in a jury verdict favorable to plaintiffs. Final judgment was entered on April 20, 1972. Defendant filed Notice of Appeal on May 15 and 18, respectively.

On May 19, Pruitt filed a Motion for Reconsideration directed to the denial of its Motion for Summary Judgment on January 31, 1969, thereby attempting to reopen the indemnity question. In opposition, Monsanto filed its Response. An exchange of briefs followed. The motion and related jurisdictional question are now ripe for determination.

■■ Concerning the Court's jurisdiction of Pruitt's Motion for Reconsideration, the docket entry of January 31, 1969 was the Court's final pronouncement or order on the indemnity issue. United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 78 S.Ct. 674, 2 L. Ed.2d 721 (1958). Nonetheless, lacking the determination required by Fed.R. Civ.P. 54(b), the order was unappealable but remained subject to revision until final judgment.

■ Upon entry of final judgment on April 20, 1972, all prior decisions, rulings and orders (including the order of January 31, 1969) became final and appealable. 9 Moore's Federal Practice ¶ 110.07 at p. 109 (1970). Bearing the foregoing in mind, a question is raised

as to whether this Court can consider Pruitt's present motion which was filed more than ten days after entry of final judgment, the latter being the maximum period allowed for amending final judgments. Fed.R.Civ.P. 59. The ten-day limitation period applies to the motion unless Pruitt is entitled to relief under Rule 4, which would allow Pruitt thirty days rather than ten days.

■■ Pruitt is entitled to relief under Fed.R.Civ.P. 60(b), which provides relief from mistakes, inadvertence, surprise, and other errors. Both Professors Wright and Moore are of the view that the term "mistake" should encompass judicial mistake in applying the appropriate law. 3 Barron & Holtzoff, Federal Practice & Procedure ¶1325 at 407 (Wright ed. 1958); 7 Moore's Federal Practice ¶60.22(3) (1971). Rule 60(b) is liberally construed. In re Casco Chem Co., 335 F.2d 645 (5th Cir. 1964). The Court of Appeals for the Fifth Circuit has followed the sensible suggestion of the academicians. Meadows v. Cohen, 409 F.2d 750 (5th Cir. 1969); McDowell v. Celebreeze, 310 F. 2d 43 (5th Cir.1962).

■ The purpose behind allowing the trial court to correct its own errors is to prevent expensive appeals. Schildhaus v. Moe, 335 F.2d 529, 531 (2nd Cir.1964). Rule 60(b) is applicable to a motion for reconsideration where, as here, it is based on a change in the controlling case law. Schildhaus v. Moe, supra; Tarkington v. United States Lines Co., 222 F.2d 358 (2nd Cir.1955). Because it was filed within the thirty-day limit for notice of appeal, Fed.R. App.P. 4, Pruitt's motion will be deemed timely filed. Meadows v. Cohen, supra; *Moore,* supra ¶62.22(3) at 261.

Pruitt contends that two cases decided after this Court entered its order of January 31, 1969, changed the law applicable to the indemnity question. Joe Adams & Son v. McCann Construction Co., 475 S.W.2d 721 (Tex.1971); Martin Wright Electric Co. v. W. R. Grimshaw

Co., 419 F.2d 1381 (5th Cir.1969) cert. den. 397 U.S. 1022, 90 S.Ct. 1263, 25 L. Ed.2d 532 (1970) (applying Texas law). In each case a claim for indemnification was denied.

The *Adams* court attempted to distinguish prior Texas cases but one commentator has forcefully argued that the decision has changed the Texas law, Case Note, 50 Texas L.Rev. 520 (1972). Previous Texas policy gave broad effect to general indemnity provisions. E.g., Ohio Oil Co. v. Smith, 365 S.W.2d 621 (Tex.1963). Indemnification was frequently allowed even where the indemnitee negligently caused the accident. E. g., Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex. 1963). In *Adams*, the Texas Supreme Court adopted a stricter view in applying indemnity contracts. It held that "an indemnity agreement will not protect the indemnitee against the consequences of his own negligence *unless* the obligation is expressed in unequivocal terms." (Emphasis added.) 475 S.W.2d at 723. *Adams* differentiates between accidents involving negligence by the indemnitee (in this case Monsanto), and those which do not. In the former, indemnification will be allowed only if provided for by clear contract language; in the latter, less precise contractual language will suffice.

The teaching of *Adams* compels this Court to determine whether this accident resulted from Monsanto's negligence. In doing so, the Court must disregard the jury findings and look solely to the Agreed Statement of the Case filed March 18, 1968, which governs the third-party action. After careful consideration of that statement, the Court finds that Monsanto was negligent in the operation of its plant on March 15, 1966 and finds such negligence to be the proximate cause of the injuries incurred by plaintiffs. Monsanto falls squarely within the ambit of *Adams*, an indemnitee seeking protection from its own negligence.

This Court must next examine the contract to determine whether the indemnity clause next quoted unequivocally protects Monsanto:

> The Contractor (Pruitt) agrees to indemnify and save Monsanto harmless against any and all loss, damage, costs and expenses which it may hereafter suffer or pay out by reason of any claims, actions and rights of action, in law or in equity, arising out of the performance of the Work, and resulting from injuries or damages occuring to, or caused in whole or in part by, the Contractor (or his employees), any subcontractor (or its employees), or any person, firm or corporation (or the employees thereof) directly or indirectly employed or engaged by either the Contractor or any subcontractor.

While its language differs from the language under examination in *Adams* and *Wright*, the present contract does not clearly and without question obligate Pruitt to suffer losses resulting from Monsanto's negligence.

Monsanto raises two objections. First, it claims that *Adams* and *Wright* do not apply because there was no finding of negligence in the third-party claim. The Court's finding in this opinion renders that objection moot. Such a finding was not made earlier because under the state of the law at that time, none was necessary. Under the prior law, a broad indemnity clause would be given effect without regard to the indemnitee's negligence. Thus this Court did not then attempt to categorize Monsanto's conduct. Under *Adams*, such determinations are now necessary. Accordingly, the Court has now reviewed the stipulated facts and finds Monsanto negligent.

Secondly, Monsanto objects to reopening the indemnity issue after the jury determination of negligence. Monsanto contends that jury findings of fact differing from the Agreed Statement of the Case cannot be the basis of an at-

tack on the earlier decision. Although that contention is correct, the objection is irrelevant because the rehearing was not based on any "new" facts. Pruitt's Motion for Reconsideration is predicated on a change in the applicable law, not a change in the facts. As previously noted, under Rule 60(b)(1) a contention that the law has changed is a proper basis for urging reconsideration of an earlier decision.

It is appropriate to emphasize that the jury result is irrelevant to decision here. Pruitt's motion was not precipitated by new facts developed at trial; it rests on new case law. And, secondly, that new law was applied, not to jury-found facts, but to facts contained in the Agreed Statement of the Case.

Counsel for the parties shall immediately prepare and submit for the Court's signature an Amended Final Judgment, consistent with this Memorandum and Order.

Monsanto is obligated to undertake defense of the case in chief, now in preliminary stages of appeal. Although, pursuant to Fed.R.App.P. 11(d), the time for transmission of the record has been extended the maximum period of ninety days, in order to allow Monsanto sufficient time to resume responsibility for the main case and to allow it time for any further proceedings in this Court before the complete record is transmitted to the Clerk of the Court of Appeals for the Fifth Circuit, the Court will upon proper motion and certification of Monsanto, order the District Clerk to retain the record temporarily pursuant to Fed.R.App.P. 11(c).

SUPPLEMENTAL MEMORANDUM AND ORDER ON MONSANTO'S MOTION FOR NEW TRIAL AND FOR RELIEF FROM THE COURT'S MEMORANDUM AND ORDER OF AUGUST 15, 1972

Monsanto makes four contentions in moving for a new trial and other relief.

Before discussing each point, it is appropriate to note that Monsanto's contentions would be more correctly addressed to the United States Court of Appeals for the Fifth Circuit. The motion presents no new facts and its legal arguments present no contentions not considered in the original Memorandum and Order.

Monsanto first contends that Pruitt's motion was not timely filed as required under Fed.R.Civ.P. 60(b) [hereinafter called Rule 60(b)]. The two cases relied upon in Pruitt's motion are Martin Wright Electric Co. v. W. R. Grimshaw Co., 419 F.2d 1381 (5th Cir.1969) and Joe Adams & Son v. McCann Construction Co., 475 S.W.2d 721 (Tex.1971). Because these cases were decided in October of 1969 and October of 1971, respectively, Monsanto suggests that Pruitt's motion was not made within the "reasonable time" limitation of the rule.

Monsanto's contention implies that Pruitt should have filed its motion in November of 1971, soon after the *Adams* decision. A motion at that time would have been ill-advised. The liabilities of Monsanto (whom Pruitt was representing against the plaintiffs' claims of negligence) had only partially been determined. Several claims had settled while others awaited trial in state or federal court. Reconsideration of the indemnity question by this Court would have delayed settlement attempts and trial preparation. Appeal from the Court's decision would have delayed matters.

Instead of reopening the indemnity issue, Pruitt chose to await a final trial court determination of the litigated cases before again raising the question of which defendant would pay, Monsanto or Pruitt. Viewed from the standpoint of moving the severed case to a more prompt conclusion, the decision to await a final judgment was clearly a wise one. Thus, the Court affirms its holding that a Rule 60(b) motion filed within thirty

days of a judgment finally adjudicating all liabilities was timely filed.

Secondly, Monsanto claims Pruitt is attempting to use Rule 60(b) as an impermissible substitute for appeal. Pruitt did not appeal the indemnity question but did seek reconsideration of the issue in this the trial court. Monsanto simplistically equates the two events and concludes the motion for reconsideration was a substitute for appeal. Monsanto contends this is not permissible, citing Ackermann v. United States, 340 U.S. 193, 71 S.Ct. 209, 95 L. Ed. 207 (1950); Annat v. Beard, 277 F.2d 554 (5th Cir.1960); and 7 Moore's Federal Practice § 60.18[8] at 216.

Monsanto's contention reflects a misunderstanding of Rule 60(b) as interpreted by the courts and by Professor Moore. Professor Moore is clearly sympathetic to the use of Rule 60(b) here. *Id.* at § 60.22[3]. And the cases cited by Monsanto are plainly distinguishable on their facts. Both involve litigants who failed to join a co-party in appealing an adverse decision. After successful appeal by the co-party, the litigant sought to share the fruits of victory by way of a Rule 60(b) motion. In each case the motion was made long after the original adjudication. In *Ackermann* the interval was four and a half years; in *Annat,* five years had elapsed.

 In contrast, Pruitt's motion in this case was filed within the thirty-day period for initiating appeal. Thus, Pruitt was not a tardy litigant but was actively prosecuting its claim. Quite certainly Rule 60(b) cannot rescue a litigant who has ignored his legal rights, but that is not the situation here.

Although Monsanto cited Annat v. Beard, it ignored more recent Fifth Circuit cases cited in the Court's original Memorandum Opinion, Meadows v. Cohen, 409 F.2d 750 (5th Cir.1969) and McDowell v. Celebreeze, 310 F.2d 43 (5th Cir.1962). These later cases support the application of Rule 60(b) here. In *Meadows,* Chief Judge Brown states, "It is the view of this Court that under the present rule, a court is authorized under subsection (1) to correct a substantive 'mistake' of its own, if motion is made within a reasonable time, which would clearly encompass a time not exceeding the time allowed for appeal." 409 F.2d at 752, n. 4. The failure of an *Erie* court to ascertain and apply the correct state law is most certainly such a mistake.

 As a final comment on Monsanto's Rule 60(b) contentions, it is appropriate to note why the Court considered Pruitt's motion under the provisions of Rule 60(b). Motions seeking reconsideration of a decision frequently reiterate earlier arguments, facts, or citations and seldom bring new light to the issue. Parties need only a short time to prepare such arguments. Having already considered the problem, the courts can deal with these arguments expeditiously. Thus the interest in finality of judgments dictates rules which allow only a brief time to file these motions.

In contrast, Pruitt's Motion to Reconsider brought a new event to the Court's attention; to wit, new cases affecting the indemnity issue. Pruitt's claim was similar to allegations of surprise, newly discovered evidence, and fraud, which are considered under Rule 60(b). Such claims present new arguments or facts for the Court's consideration. If alteration of an earlier decision is required, action by the District Court can prevent lengthy and expensive appeals. Because they present new data, these motions may have a better chance of gaining judicial acceptance than do motions presenting previously heard material. Thus, the interests of justice are best served through consideration at the trial court stage of motions like Pruitt's.

Entertaining such motions after expiration of the ten-day limitation on most motions, is also justified. The event precipitating the motion may have taken place more than ten days after judgment. Alternatively, more than ten days may be required to prepare and submit the new argument to the court. In either case, the interest of justice is better served by allowing the additional time period provided by Rule 60(b). Thus the Court has concluded that a motion made under Rule 60(b), with its more liberal time limitation, is an appropriate device for claiming that new and controlling law requires reversal of the District Court's decision.

In addition to the Rule 60(b) contentions, Monsanto claims the Court's rendition of a judgment was improper. According to Monsanto, upon determining that Monsanto's negligence was of critical significance, the Court should have proceeded to try the issue. Monsanto views the negligence question as a contested issue of fact not established as a matter of law.

This contention is sharply at odds with Monsanto's earlier position. The indemnity question was originally submitted to the Court after the parties had stipulated the controlling facts. The Court was to interpret the contract and apply the contract to those facts. Although the Agreed Statement did not admit Monsanto's negligence, the elemental facts were not disputed. In its Memorandum of August 15, the Court considered those elemental facts and found Monsanto negligent on the evening in question. This fact finding by the Court was consistent with the Court's role as assigned by the parties originally. Denying the appropriateness of a negligence finding by this Court requires either a repudiation of the judicial role of fact-finder, or a denial of the facts submitted in the Agreed Statement. Monsanto cannot be heard to do either.

It is unclear why Monsanto would seek to again litigate the negligence issue. A federal jury which heard the *Oliver and Evans* consolidated case was not privy to the Agreed Statement of the Case which controlled the indemnity issue. The stipulated facts therein contained confidential admissions and were not available to plaintiffs. Acting without benefit of the Agreed Statement, the jury found Monsanto negligent. Similarly, a state court jury in the *Milam* case, involving the same occurrence, found Monsanto negligent. Although the jury results do not control here, they demonstrate that judicial economy would not be served by relitigating the question of Monsanto's negligence.

Monsanto's contention number four is a "residuary clause" containing various objections. Monsanto questions the wording of the Court's original Memorandum which stated that "all plaintiffs settled with defendant except Pruitt employees C. J. Oliver and James B. Evans, Jr." Monsanto points out that the *Milam* claim was hotly contested in state court. Obviously the language in the Memorandum was limited to plaintiffs before this Court.

Monsanto also reurges the equitable defenses of waiver, laches, estoppel, and others which it earlier presented. When previously offered, these arguments were not convincing. Equitable defenses appear inapposite here. Assuming they apply, such defenses must give way to stronger considerations which demand reopening the indemnity question and reversing the prior decision.

The most serious charge is that the handling of the negligence defense by Pruitt's counsel was faulty. Monsanto claims that because of this misrepresentation it should not pay the resulting losses. Specifically, Monsanto alleges that Pruitt improperly refused to settle the Milam and Evans claims at reasonable figures and in addition committed

numerous prejudicial errors in the *Milam* trial.

Monsanto's charge of misrepresentation in the *Oliver* and *Evans* cases is improbable on its face. Throughout the pendency of this litigation defendant's counsel had no assurance that the burden of satisfying settlements and judgments would not ultimately fall to Pruitt. The defense of the negligence claims was conducted by able counsel with every incentive to defend the cases vigorously.

Because of Monsanto's particular charges of misrepresentation, the Court has reviewed the record in the *Oliver* and *Evans* cases and the Texas Court of Civil Appeals decision in Monsanto Co. v. Milam, 480 S.W.2d 259 (Tex.Civ.App. —Houston [1st Div]). There is no evidence that defendant's refusal to settle at a price agreeable to plaintiffs was in bad faith or demonstrated poor judgment. Furthermore, there is no showing that the alleged errors in the *Milam* case were so egregious as to constitute misrepresentation of Monsanto's defense. Monsanto's claim is thus not supported by the facts.

 Monsanto may not now be heard to complain of having to pay the judgments after Pruitt has defended the claims. It was Monsanto which forced the indemnity question. After Pruitt declined to voluntarily assume the defenses and pay the costs, Monsanto brought its third-party indemnity action. The parties obtained a judicial determination of the third-party question before the trial of the negligence claims. Monsanto could have continued to defend the negligence claims without prejudicing its right of indemnification from Pruitt. But, Monsanto elected not to do so.

For the foregoing reasons, Monsanto's Motion for New Trial and for Relief from the Court's Memorandum and Order of August 15, 1972 is denied.